# NO. 12-18-00239-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *MALCOLM MALIK LOVE, APPELLANT* | § | *APPEAL FROM THE 7TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS, APPELLEE* | § | *SMITH COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Malcolm Malik Love appeals his conviction for aggravated assault with a deadly weapon. In one issue, he argues that the trial court abused its discretion by not instructing the jury on the lesser included offense of deadly conduct. We affirm.

### BACKGROUND

Appellant was indicted for aggravated assault with a deadly weapon against William Richardson by threatening Richardson with imminent bodily injury by pointing a firearm at Richardson. Appellant entered a plea of "not guilty" and the case proceeded to a jury trial.

The events leading to Appellant's indictment occurred in a Walmart parking lot in Smith County, Texas on the night of September 16, 2016. At trial, the evidence established that Appellant and Richardson shared a mutual dislike for one another because they previously both dated a woman named Ornella Umutoni. On September 16, Richardson and his girlfriend, Shatorry Newman, went to Walmart with Kendrick Davis and his girlfriend, Jayla Searcy. In the car on the way to Walmart, Searcy and Davis got into an argument and Davis grabbed Searcy's arm. Upon arrival at Walmart, Searcy, who was crying and visibly upset, fled into the parking lot to call her brother and tell him about the argument. Appellant noticed Searcy and approached her to check on her welfare. Thereafter, Richardson and Davis approached Appellant and Searcy.

Appellant pulled a gun and pointed the gun towards Richardson and Davis, causing them to back away from Appellant and return to their vehicle. Walmart's surveillance cameras captured video, but not audio, footage of the incident.

Appellant testified that he did not intend to harm or threaten Richardson. He claimed he drew the weapon to make Richardson and Davis leave and to ensure Richardson did not harm him or Searcy.

Appellant requested jury instructions on the lesser included offense of deadly conduct and the affirmative defense of self defense, both of which the trial court denied.[1] The jury found Appellant "guilty" of aggravated assault with a deadly weapon and sentenced him to imprisonment for four years. This appeal followed.

## JURY INSTRUCTION

In Appellant's sole issue, he argues that the trial court abused its discretion by refusing to instruct the jury on the lesser included offense of misdemeanor deadly conduct. Appellant argues that misdemeanor deadly conduct is a lesser included offense of aggravated assault with a deadly weapon in this case because the elements of misdemeanor deadly conduct are established by proof of the same or less than all the facts required to establish the commission of aggravated assault as charged in the indictment. The State concedes that misdemeanor deadly conduct is a lesser included offense of aggravated assault with a deadly weapon as alleged in this case, but argues that the evidence adduced at trial did not warrant a jury instruction on deadly conduct, and thus, the trial court did not abuse its discretion in refusing to give the instruction.

**Standard of Review and Applicable Law**

Whether a defendant is entitled to a jury instruction on a lesser included offense involves a two step analysis. *Safian v. State*, 543 S.W.3d 216, 219 (Tex. Crim. App. 2018). The first step asks whether the lesser included offense is included within the proof necessary to establish the charged offense.[2] *Id.* at 220; TEX. CODE CRIM. PROC. ANN. art. 37.09(1) (West 2006) ("An offense is a lesser included of the charged offense if: (1) it is established by proof of the same or less than

---

[1] The trial court found that the evidence did not support a self defense instruction, and Appellant does not argue on appeal that the trial court erred in denying his request for one.

[2] Article 37.09 lists four circumstances in which an offense is a lesser-included offense. The instant case involves only the possibility described by Article 37.09(1). TEX. CODE CRIM. PROC. ANN. art. 37.09 (West 2006).

all the facts required to establish the commission of the offense charged[.]"). Whether an offense is a lesser included offense of the charged offense is a question of law, and does not depend upon the evidence adduced at trial. *Safian*, 543 S.W.3d at 220.

In conducting the first step of the analysis, we compare the elements of the greater offense as pleaded to the statutory elements of the potential lesser-included offense in the abstract. *Id*. When the charged offense may be committed in more than one manner, the manner alleged will determine the availability of lesser-included offenses. *Id.* An offense is a lesser-included offense of the charged offense if the indictment either: (1) alleges all of the elements of the lesser-included offense, or (2) alleges elements plus facts (including descriptive averments, such as non-statutory manner and means, that are alleged for purposes of providing notice) from which all of the elements of the lesser-included offense may be deduced. *Id.* The elements of the lesser-included offense do not have to be pleaded in the indictment if they can be deduced from facts alleged in the indictment. *Id.* When there are allegations in the indictment that are not identical to the elements of the lesser offense, a court should apply the functional-equivalence test to determine whether elements of the lesser offense are functionally the same or less than those required to prove the charged offense. *Id.* An element of the lesser-included offense is functionally equivalent to an allegation in the charged greater offense if the statutory elements of the lesser offense can be deduced from the elements and descriptive averments in the indictment for the charged greater offense. *Id.*

The second step of the analysis requires us to determine whether there is some evidence in the record that would permit a jury to rationally find that, if the defendant is guilty, he is guilty only of the lesser included offense. *Id.* When determining whether the trial court properly denied a request for a lesser-included offense instruction, we review all of the evidence presented at trial. *Rousseau v. State*, 855 S.W.2d 666, 673 (Tex. Crim. App. 1993). Anything more than a scintilla of evidence may be sufficient to entitle a defendant to a jury instruction on a lesser-included offense. *Cavazos v. State*, 382 S.W.3d 377, 385 (Tex. Crim. App. 2012). "Although this threshold showing is low, 'it is not enough that the jury may disbelieve crucial evidence pertaining to the greater offense, but rather, there must be some evidence directly germane to the lesser-included offense for the finder of fact to consider before an instruction on a lesser-included offense is warranted.'" *Sweed v. State*, 351 S.W.3d 63, 68 (Tex. Crim. App. 2011) (quoting *Skinner v. State*, 956 S.W.2d 532, 543 (Tex. Crim. App. 1997)). "[T]he standard may be satisfied if some evidence

3

refutes or negates other evidence establishing the greater offense or if the evidence presented is subject to different interpretations." *Id.*

**First Step**

In this case, the State alleged that Appellant intentionally and knowingly threatened Richardson with imminent bodily injury by pointing a firearm at Richardson, and that Appellant used or exhibited a deadly weapon, a firearm, during the commission of the assault. *See* TEX. PENAL CODE ANN. § 22.02(a)(2) (West 2019) ("A person commits an offense if the person commits assault as defined in § 22.01 and the person . . . (2) uses or exhibits a deadly weapon during the commission of the assault).[3] A firearm is a deadly weapon. *Id.* § 1.07 (17)(A) (West Supp. 2018). In contrast, misdemeanor deadly conduct requires evidence that a person recklessly engages in conduct that places another in imminent danger of serious bodily injury. *Id.* § 22.05(a) (West 2019).

The State concedes that deadly conduct is a lesser included offense of aggravated assault as charged in this case based upon the court of criminal appeal's holding in *Safian*. *Safian,* 543 S.W.3d at 222. In *Safian*, the appellant was driving away from a known drug house when he was pulled over by a marked police vehicle. *Id.* at 218. The appellant stopped his vehicle in the middle of the street and the officer exited his patrol vehicle and approached the appellant's vehicle on foot. *Id.* The appellant quickly placed his vehicle in gear and accelerated forward, forcing the officer to jump into his patrol vehicle to avoid being hit by the appellant's vehicle. *Id.* The court held that "[a] comparison of the language in the appellant's indictment for aggravated assault to the elements of deadly conduct shows that, although they use different language to describe the prohibited conduct, the offenses are functionally equivalent." *Id.* at 221. In so holding, the court undertook an analysis of its precedent in *Bell v. State*, wherein the court held that reckless conduct, as a matter of law, is a lesser included offense of aggravated assault when it is alleged that the defendant used a deadly weapon.[4] 693 S.W.2d 434, 438-39 (Tex. Crim. App. 1985).

In *Bell*, the appellant fired four gunshots at the occupied trailer home of his neighbor. *Id.* at 436. One bullet passed completely through the trailer, but no one was injured. *Id.* The appellant

---

[3] Intentionally or knowingly threatening another with imminent bodily injury is a means of committing the offense of assault. TEX. PENAL CODE ANN. §22.01(2) (West 2019).

[4] Reckless conduct was renamed deadly conduct in 1993, but the substantive elements remained unchanged. *See* Act of June 19, 1993, 73rd Leg., R.S., ch. 900, § 22.05, 1993 Tex. Sess. Law. Serv. 3586, 3623 (effective Sept. 1, 1994).

was charged with aggravated assault by intentionally or knowingly threatening his neighbor with imminent bodily injury by using a deadly weapon. *Id.* at 437. The court held that reckless conduct was a lesser included offense of aggravated assault under the circumstances in which the indictment charged that Bell "knowingly and intentionally use[d] a deadly weapon, to wit: a firearm, and did then and there threaten [the victim] with imminent bodily injury by the use of said deadly weapon." *Id.* at 437-38. The court held that the allegation of threatening another with imminent bodily injury by the *use* of a deadly weapon in the aggravated assault charge was functionally equivalent to engaging in conduct that places another in imminent danger of serious bodily injury, as would be required to establish reckless conduct. *Id.* at 437–39. The court reasoned that when the threat is accomplished by the *use* of a deadly weapon, the victim is necessarily exposed to the deadly character of the weapon and the inherent risk of serious bodily injury. *Id.* at 438. Therefore, the danger of serious bodily injury is necessarily established when a deadly weapon is *used* in the commission of an offense, and it follows that proof of threatening another with imminent bodily injury by the *use* of a deadly weapon constitutes proof of engaging in conduct that places another in imminent danger of serious bodily injury. *Id.* at 438-39.

In *Safian*, the state attempted to distinguish *Bell* by arguing that *exhibition* of a weapon fundamentally differs from use, and thus, the *exhibition* of a motor vehicle as a deadly weapon would not necessarily mean that a victim was placed in actual imminent danger of serious bodily injury as is required for deadly conduct. *Safian*, 543 S.W.3d at 223. The state relied on the Amarillo Court's reasoning in *Miller v. State* as authority for their position. 86 S.W.3d 663 (Tex. App—Amarillo 2002, pet. ref'd). In *Miller*, the appellant hid from officers in a hay bale after fleeing on foot after a high speed vehicle chase. *Id.* at 664. When approached by law enforcement and asked to surrender, the appellant pulled a handgun out of his pocket and waved it in the direction of officers while threatening to shoot them with the gun. *Id.* The appellant was charged with aggravated assault by intentionally or knowingly threatening the victim with imminent bodily injury and using or exhibiting a deadly weapon, a firearm, during the commission of the assault. *Id*. at 664. The Amarillo court, in holding that deadly conduct was not a lesser included of aggravated assault as alleged against appellant, reasoned that the addition of the word *exhibited* to the language of the appellant's indictment distinguished the case from *Bell*. *Id*. at 666-67.

The difference is dispositive, as it does not necessarily follow that the danger of serious bodily injury is established when a deadly weapon is "exhibited" in the commission of the offense as opposed to

5

being "used." Therefore, under the circumstances of this case, deadly conduct is not a lesser included offense of aggravated assault as charged because the statutory elements of deadly conduct would not necessarily be established by proof of the same or less than all the facts required to establish the commission of the offense charged.

*Id.* at 667.

The *Safian* court held that the state's reliance on *Miller* was misplaced and the exhibition of a motor vehicle as a deadly weapon implicates the same inherent danger of serious bodily injury that accompanies the use of a deadly weapon. *Safian,* 543 S.W.3d at 224. The court held that the pleadings for aggravated assault would require proof that the exhibition of the motor vehicle made it capable of causing death or serious bodily injury, and thus, the pleading distinction between "use" and "exhibition" of the motor vehicle would not affect the analysis under *Bell*. *Id.* The court noted that it previously determined that, based upon the meanings of the terms "use" and "exhibit," that one could not exhibit a motor vehicle in such a way that it could be properly characterized as a deadly weapon without also using the deadly weapon. *Id.*

In a footnote, the *Safian* court noted that the case involved an allegation of a non per se deadly weapon, and therefore, it limited its analysis accordingly and did not "expressly consider whether an allegation of use or exhibition of a per se deadly weapon, such as a firearm, would be encompassed within our holding today." *Id.* at n.5. Thus, the *Safian* case does not expressly support the position taken by Appellant and the State that deadly conduct is a lesser included offense of aggravated assault as alleged against Appellant.

Nevertheless, we conclude that misdemeanor deadly conduct is a lesser included offense of aggravated assault as alleged against Appellant. We agree with the Waco court's decision in *Amaro v. State*, which disagreed with *Miller's* reasoning in holding that deadly conduct is a lesser included offense of aggravated assault by threat by use or exhibition of a firearm based upon the court of criminal appeals's reasoning in *Bell*. *See Amaro v. State*, 287 S.W.3d 825, 829 (Tex. App.—Waco 2009, pet. ref'd). In so doing, the court noted that "merely pointing a firearm in another's direction can place that person in imminent danger of serious bodily injury." *Id.* (citing TEX. PENAL CODE ANN. § 22.05(c) ("Recklessness and danger are presumed if the actor knowingly pointed a firearm at or in the direction of another whether or not the actor believed the firearm to be loaded.")). We conclude that danger of serious bodily injury can be established by *use* or *exhibition* of a firearm. *Id.* Therefore, we hold that misdemeanor deadly conduct is a lesser

6

included offense of aggravated assault under the circumstances charged in the indictment. *Id.*; *see also* **Bell**, 369 S.W.2d at 437-39.

## Step Two

Appellant argues that he was entitled to a deadly conduct instruction based upon his testimony. Specifically, he points to his testimony that he had no intent to harm or threaten Richardson, but only drew his weapon because he feared for his safety and wanted to ensure that Richardson and Davis returned to their vehicle.

For Appellant to be entitled to an instruction on deadly conduct, there must be some evidence that if he is guilty, he is only guilty of the lesser included offense. *See **Guzman v. State**,* 188 S.W.3d 185, 188 (Tex. Crim. App. 2006). Appellant's testimony shows he intentionally or knowingly pointed the gun at Richardson. The relevant portions of Appellant's testimony on direct examination regarding his intent and actions are as follows:

> As [Richardson] was getting closer and closer, I noticed who he was. And that's when I made a decision that, for my safety and for [Searcy's] safety – to not be a victim to another assault.
> I pulled out my gun and told them that they needed to leave. And as I pulled out my gun, I made sure that their destination was to the car.
> My intention was not to harm them or anything. I did not make any threats to harm them or – my intention was not to cause bodily injury to anyone.
> My intention was to make sure that [Searcy] was okay. And after I made sure that they was far away from her, I put my gun back up. [sic] And I walked towards her and immediately called the police.

On cross examination, Appellant initially disputed that he pointed the gun at Richardson, insisting that he pointed it only in "his direction." Further, Appellant testified that at some points in the surveillance video, what appeared to be Appellant pointing a gun was actually Appellant pointing his finger. However, Appellant unequivocally acknowledged that he pointed the gun at Richardson at least once, and stated many times that he did so because Richardson and Davis were approaching him and he wanted them to leave him alone.

> Q: And you have the gun pointed at him, yes?
> A: Yes, sir.
> …
> A: [Richardson] was moving towards me.
> Q: Okay.
> A: So that was my reason for pulling the gun out.
> …
> Q: Yes. He was moving towards you, at one point, when you had the gun out? That's your answer?

7

A: Sir, I – when he – I pulled the gun out because he was moving towards me.

Appellant's testimony demonstrates that he acted intentionally and knowingly in pointing the gun at Richardson, and that he did so to force Richardson and Davis to leave him and Searcy alone. Thus, his actions were not reckless, and his testimony would preclude a rational jury from finding him guilty only of deadly conduct. *See* TEX. PENAL CODE ANN. § 6.03(c) (West 2011); *see also* ***Benavides v. State***, No. 08-07-00193-CR, 2009 WL 3031175, at *1 (Tex. App.—El Paso Sept. 23, 2009, pet. ref'd) (op., not designated for publication) (defendant not entitled to deadly conduct as lesser included offense of aggravated assault when defendant intentionally pointed the gun at the victim so that victim would leave him alone). While Appellant denied intending to harm anyone or threaten Richardson, his stated motivation for pointing the gun, i.e., to get Richardson and Davis to leave him alone, unequivocally shows that he knew pointing the gun at Richardson would cause him to fear imminent bodily injury. *See* TEX. PENAL CODE ANN. §§ 6.03(b); 22.02(a)(2).

Appellant cites two cases in support of his argument that his testimony warrants an instruction on deadly conduct. *See* ***Hayes v. State***, No. 05-06-00980-CR, 2008 WL 204510, at *2 (Tex. App.—Dallas Jan. 25, 2008, no pet.) (op., not designated for publication); ***Brown v. State***, No. 02-03-289-CR, 2004 WL 1944722, at *5 (Tex. App.—Fort Worth Aug. 30, 2004, no pet.) (mem. op., not designated for publication). We do not view these cases as persuasive. Both ***Hayes*** and ***Brown*** concern legal sufficiency reviews of cases in which the defendant was charged with deadly conduct under similar facts as Appellant's case. ***Hayes***, 2008 WL 204510, at *2; ***Brown***, 2004 WL 1944722, at *5. Accordingly, these cases are not instructive on the issue of whether Appellant was entitled to a deadly conduct instruction when he was charged with aggravated assault. It is within the prosecutor's discretion to decide which cases to prosecute and what charges to file. ***Neal v. State***, 150 S.W.3d 169, 173 (Tex. Crim. App. 2004). Simply because other prosecutors in other jurisdictions elected to file deadly conduct charges, rather than aggravated assault charges, in similar fact scenarios has no relevance to whether Appellant was entitled to a jury instruction on deadly conduct in this case.

Because Appellant's testimony shows that he acted intentionally and knowingly when he pointed the gun at Richardson, and not recklessly, we conclude that he was not entitled to an instruction on the lesser included offense of deadly conduct. *See* ***Guzman***, 188 S.W.3d at 188; *see also* ***Benavides***, 2009 WL 3031175, at *1. Accordingly, we hold the trial court did not abuse its

discretion in refusing to instruct the jury on the lesser included offense of deadly conduct. Appellant's sole issue is overruled.

## DISPOSITION

Having overruled Appellant's sole issue, we *affirm* the trial court's judgment.

**GREG NEELEY**
Justice

Opinion delivered August 21, 2019.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)

# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

AUGUST 21, 2019

NO. 12-18-00239-CR

MALCOLM MALIK LOVE,
Appellant
V.
THE STATE OF TEXAS,
Appellee

Appeal from the 7th District Court
of Smith County, Texas (Tr.Ct.No. 007-1446-17)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Greg Neeley, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*