ALCALA, J., delivered the opinion for a unanimous Court.
In this case we consider whether, in a prosecution for aggravated assault by threat in which it was alleged that the defendant used or exhibited a motor vehicle as a deadly weapon, the defendant was entitled to a lesser-included-offense instruction on deadly conduct. The trial court rejected the request by Anthony Robert Safian, appellant, for such an instruction, and the court of appeals upheld that ruling by determining that, as a matter of law, deadly conduct is not a lesser-included offense of the charged offense under these circumstances. We disagree. Having already held in Bell v. State that deadly conduct, as a matter of law, is a lesser-included offense of aggravated assault by threat when it is alleged that the defendant used a deadly weapon during the commission of the offense, we now reach that same holding in the instant case where it was alleged that appellant used or exhibited a motor vehicle as a deadly weapon. See Bell v. State , 693 S.W.2d 434, 438-39 (Tex. Crim. App. 1985). Accordingly, we reverse the court of appeals's judgment upholding appellant's conviction for aggravated assault by threat on a public servant.[1] Because the court of appeals analyzed only the first step of the two-step analysis for determining whether appellant was entitled to a lesser-included offense instruction, we remand this case for that court to conduct the second step of that analysis.
I. Background
In September 2014, while undercover police officers were monitoring a suspected drug house, the officers observed appellant arrive at the house, enter it, and then depart within the span of five minutes. The officers followed appellant's vehicle as he left the house until he stopped a short distance away in the middle of a side street. The officers called for a marked police car to effectuate a traffic stop of appellant's vehicle. Officer Pearce arrived in a marked patrol car and parked approximately ten to twenty feet directly in front of appellant's vehicle that was still positioned in the middle of the street. Officer *218 Pearce got out of his patrol car and began to approach appellant's vehicle on foot. When he noticed Officer Pearce approaching, appellant quickly placed his vehicle in gear and accelerated forward. Officer Pearce jumped into his patrol car to avoid being hit. Appellant's vehicle did not hit Officer Pearce or his patrol car, but appellant's vehicle came within about a foot of striking the patrol car's open door. A high-speed chase ensued during which appellant ran stop signs and drove into oncoming traffic before colliding with another vehicle, which ended the pursuit and resulted in his arrest. Police officers then found heroin and drug paraphernalia in his vehicle.
Appellant was charged with three offenses: aggravated assault on a public servant, evading arrest or detention while using a vehicle, and possession of less than a gram of heroin. The indictment for aggravated assault on a public servant, the subject of the instant petition for discretionary review, alleged,
[Appellant] did intentionally or knowingly threaten imminent bodily injury to M. Pearce, a public servant ... and [appellant] did use or exhibit a deadly weapon during the commission of the assault, to wit: a motor vehicle, that in the manner of its use or intended use was capable of causing death or serious bodily injury[.]
Appellant pleaded not guilty to the three charges and he was tried before a single jury.
At the close of evidence, appellant requested an instruction on deadly conduct as a lesser-included offense to the charged offense of aggravated assault on a public servant. See TEX. PENAL CODE §§ 22.05(a) ; 22.02(a)(2), (b)(2)(B). The trial court denied the request. The jury found appellant guilty of all three charges and the enhancement paragraphs true, and the trial court assessed punishment at eighteen years' confinement for both the evading arrest and aggravated assault on a public servant charges, and ten years' confinement for possession of heroin.
On appeal, appellant argued that the trial court erred by refusing his request for a lesser-included offense instruction on deadly conduct. Appellant contended that this Court's decision in Bell v. State established that deadly conduct is a lesser-included offense of aggravated assault by threat when it is alleged that a deadly weapon was used or exhibited during the commission of the offense. See Bell , 693 S.W.2d at 438-39. The court of appeals rejected this argument. Safian v. State , No. 02-15-00154-CR, 2016 WL 828337, at *7-8 (Tex. App.-Fort Worth March 3, 2016) (mem. op., not designated for publication).[2] Although it noted our analysis and holding in Bell that deadly conduct was a lesser-included offense of assault by threat aggravated by the use of a deadly weapon, the court of appeals also found that "deadly conduct is not a lesser-included offense of aggravated assault under all circumstances." Id. at *7 (citing Hall v. State , 225 S.W.3d 524, 531, 535 (Tex. Crim. App. 2007) ). The court of appeals observed that the indictment in appellant's case alleged aggravated assault not solely by "the use" of a deadly weapon as in Bell , but rather alleged that appellant "used or exhibited" a deadly weapon. Id. Because the allegation in the instant indictment differed from that in Bell by including the alternative of exhibiting a deadly weapon, the court of appeals determined that Bell was distinguishable *219 and, thus, it held that the trial court did not err by refusing to provide a jury instruction on deadly conduct. Id. at *8.
In his brief on discretionary review, appellant reasserts his contention that this Court's decision in Bell establishes that deadly conduct is a lesser-included offense of aggravated assault under these circumstances because the proof necessary to establish deadly conduct is within the proof necessary to establish aggravated assault by the use or exhibition of a deadly weapon.[3] Specifically, appellant argues that, as charged, the elements of aggravated assault-that is, using or exhibiting a motor vehicle as a deadly weapon while threatening Officer Pearce with imminent bodily injury-necessarily constitute proof of engaging in conduct that placed Officer Pearce in imminent danger of serious bodily injury, which would permit a conviction for deadly conduct. See TEX. PENAL CODE §§ 22.01(a)(2), 22.02(a)(2), 22.05(a). Appellant thus contends that he has satisfied the first step of the lesser-included-offense analysis and that the court of appeals erred by holding to the contrary.
In its brief, the State challenges appellant's position by arguing that deadly conduct would require greater proof than the proof needed to establish aggravated assault as alleged in the indictment. In particular, the State contends that "deadly conduct requires a showing of actual imminent danger, while the indictment alleging ... aggravated assault required only evidence of exhibition of a deadly weapon's intended use." Given these differences, the State contends that the offenses are not functionally equivalent, and, thus, it maintains that the court of appeals correctly held that appellant was not entitled to the lesser-included-offense instruction. The State concedes that Bell would control if the indictment in appellant's case had alleged only the use of a deadly weapon. However, the State argues that, because the indictment alleged that appellant committed aggravated assault in a manner different from that alleged in Bell -that is, by using or exhibiting a deadly weapon- Bell does not establish that deadly conduct is a lesser-included offense of aggravated assault under these circumstances. The State maintains that this Court should limit the holding of Bell to situations involving the use of a deadly weapon in an aggravated assault case, rather than extending it to apply to the use or exhibition of a deadly weapon.
II. Analysis
We conclude that, as a matter of law, deadly conduct is a lesser-included offense of aggravated assault alleged by the use or exhibition of a motor vehicle as a deadly weapon. Although the elements of deadly conduct are not phrased identically to the elements of the greater offense as alleged here, the elements satisfy the functional-equivalence test for the first step of the lesser-included-offense analysis. We explain our conclusion by describing the applicable law for lesser-included offense instructions, and we then apply that law to the circumstances of this case.
A. Applicable Law for Lesser-Included-Offense Instructions
Whether a defendant is entitled to a jury instruction on a lesser-included offense involves a two-step analysis. Rice v. State , 333 S.W.3d 140, 144 (Tex. Crim. App. 2011). The first step of the lesser-included-offense analysis asks "whether *220 the lesser-included offense is included within the proof necessary to establish the offense charged." Id. (citing Hall v. State , 225 S.W.3d 524, 536 (Tex. Crim. App. 2007) ; TEX. CODE CRIM. PROC. art. 37.09(1) ("An offense is a lesser included offense if: (1) it is established by proof of the same or less than all the facts required to establish the commission of the offense charged[.]") ).[4] This is a question of law, and it does not depend on the evidence to be produced at trial. Rice , 333 S.W.3d at 144. The second step of the lesser-included-offense analysis is to determine whether there is some evidence in the record that would permit a jury to rationally find that, if the defendant is guilty, he is guilty only of the lesser-included offense. Id. at 145. Because the court of appeals addressed only the first step of this analysis, we limit our further discussion of the applicable law to the first step.
In conducting the first step of the analysis, we "compare the elements of the greater offense as pled to the statutory elements of the potential lesser-included offense in the abstract." See Ex parte Castillo , 469 S.W.3d 165, 169 (Tex. Crim. App. 2015) (citing Hall , 225 S.W.3d at 531, 535 ). "[W]hen the greater offense may be committed in more than one manner, the manner alleged will determine the availability of lesser-included offenses." Hall , 225 S.W.3d at 531. "An offense is a lesser-included offense of another offense ... if the indictment for the greater-inclusive offense either: (1) alleges all of the elements of the lesser-included offense, or (2) alleges elements plus facts (including descriptive averments, such as non-statutory manner and means, that are alleged for purposes of providing notice) from which all of the elements of the lesser-included offense may be deduced." Ex parte Watson , 306 S.W.3d 259, 273 (Tex. Crim. App. 2009) (op. on reh'g). "[T]he elements of the lesser-included offense do not have to be pleaded in the indictment if they can be deduced from facts alleged in the indictment." State v. Meru , 414 S.W.3d 159, 162 (Tex. Crim. App. 2013). When there are allegations in the indictment that are not identical to the elements of the lesser offense, a court should apply the functional-equivalence test to determine whether elements of the lesser offense are functionally the same or less than those required to prove the charged offense. Cavazos v. State , 382 S.W.3d 377, 384 (Tex. Crim. App. 2012). An element of the lesser-included offense is functionally equivalent to an allegation in the charged greater offense if the statutory elements of the lesser offense can be deduced from the elements and descriptive averments in the indictment for the charged greater offense. McKithan v. State , 324 S.W.3d 582, 588-89 (Tex. Crim. App. 2010).
B. Application of the Law on Lesser-Included Offenses
Although the elements of deadly conduct are not identical to those in the charged offense of aggravated assault by use or exhibition of a deadly weapon, we conclude that the elements are functionally equivalent and thus satisfy the first step of the two-step analysis for lesser-included-offense instructions. We explain our reasoning by reviewing the statutory elements of the two offenses, discussing this Court's decision in Bell , and explaining why the Bell decision applies to the instant case.
1. Comparison of Elements of the Two Offenses *221 A comparison of the language in appellant's indictment for aggravated assault to the elements of deadly conduct shows that, although they use different language to describe the prohibited conduct, the offenses are functionally equivalent. In the instant case, as charged in the indictment, appellant was alleged to have committed aggravated assault on a public servant by intentionally or knowingly threatening Officer Pearce with imminent bodily injury and by using or exhibiting a deadly weapon during the commission of the offense, namely, a motor vehicle that in the manner of its use or intended use was capable of causing death or serious bodily injury. TEX. PENAL CODE §§ 22.01(a)(2), 22.02(a)(2), (b)(2)(B), 1.07(a)(17)(B).[5] By contrast, a person commits deadly conduct if he "recklessly engages in conduct that places another in imminent danger of serious bodily injury." Id. § 22.05(a).
Examining the elements and descriptive averments in the charged offense of aggravated assault as compared to the elements of deadly conduct, we observe at the outset that the offenses employ different terminology. Whereas the charged offense requires proof that appellant threatened another with "imminent bodily injury" while using or exhibiting a motor vehicle as a deadly weapon, the offense of deadly conduct requires proof that the actor engaged in conduct that placed another in "imminent danger of serious bodily injury." The State maintains that these differences in terminology show that deadly conduct is not, as a matter of law, a lesser-included offense of aggravated assault as charged, but appellant argues that the elements are functionally equivalent because the proof required to establish aggravated assault as alleged here necessarily includes all the proof necessary to establish the elements of deadly conduct. To resolve this dispute, we next turn to this Court's holding in Bell .
2. This Court's Precedent in Bell v. State
Because the State has conceded that this Court's holding in Bell establishes that deadly conduct, as a matter of law, is a lesser-included offense of aggravated assault when it is alleged that the defendant used a deadly weapon, the sole question before this Court is whether that holding also applies under the circumstances of this case in which the aggravated-assault charge has alleged the use or exhibition of a motor vehicle as a deadly weapon. In Bell , this Court held that reckless conduct[6] was a lesser-included offense of aggravated assault under circumstances in which the indictment had charged that Bell "knowingly and intentionally use[d] a deadly weapon, to wit: a firearm, and did then and there threaten [the complainant] with imminent bodily injury by the use of said deadly weapon." Bell , 693 S.W.2d at 437. We reasoned that the allegation of "threatening another with imminent bodily injury" by the use of a deadly weapon in the aggravated assault charge was functionally *222 equivalent to "conduct that places another in imminent danger of serious bodily injury," as would be required to establish reckless conduct. Id. at 437-38. We stated, "The precise issue thus becomes whether proof of threatening another with imminent bodily injury by using a deadly weapon constitutes proof that the actor engaged in conduct that placed another in imminent danger of serious bodily injury." Id. at 438 (emphasis original). We noted that the term danger in the reckless-conduct statute was not statutorily defined, and construing that term in accordance with its ordinary meaning, we determined that in this context it meant "exposure or liability to injury, pain, or loss," or "jeopardy; exposure to loss or injury; peril." Id. (quoting WEBSTER'S NEW COLLEGIATE DICTIONARY 285 (1981) and BLACK'S LAW DICTIONARY 355 (5th ed. 1979) ). Given this view of "danger," we explained the relationship between "imminent danger of serious bodily injury" and a "threat of imminent bodily injury" when a deadly weapon is used. Id. We stated,
Patently, threatening another with imminent bodily injury is engaging in conduct. When that threat is accomplished by the use of a deadly weapon, by definition the victim is "exposed" to the deadly character of the weapon and the inherent risk of serious bodily injury. The danger of serious bodily injury is necessarily established when a deadly weapon is used in the commission of an offense. It follows, therefore, that proof of threatening another with imminent bodily injury by the use of a deadly weapon constitutes proof of engaging in conduct that places another in imminent danger of serious bodily injury.
Id. at 438-39 (emphasis original). Given this reasoning, we held that reckless conduct was a lesser-included offense of "the offense charged" because it could be established by proof of the same facts required to establish the commission of aggravated assault by the use of a deadly weapon. Id. at 439.
As our discussion in Bell indicates, when the threat of imminent bodily injury is accomplished by the use of a deadly weapon, the victim has by definition been exposed to the deadly character of the weapon and, as a result, placed in imminent danger of serious bodily injury. Thus, an allegation that the defendant committed aggravated assault by threatening another with imminent bodily injury while using a deadly weapon is functionally equivalent to engaging in conduct that places another imminent danger of serious bodily injury. See ids="9971018" index="26" url="https://cite.case.law/sw2d/693/434/#p438">id. Deadly conduct, therefore, as a matter of law, is a lesser-included offense of aggravated assault by the use of a deadly weapon. We now explain why we conclude that this same reasoning applies to the circumstances of this case.
3. Bell 's Analysis Applies to Aggravated Assault by Use or Exhibition of a Motor Vehicle as a Deadly Weapon
We conclude that Bell 's holding that deadly conduct is, as a matter of law, a lesser-included offense of aggravated assault by use of a deadly weapon also applies to the instant case in which it was alleged that appellant committed aggravated assault by using or exhibiting a motor vehicle as a deadly weapon.
Here, the aggravated assault charge required the State to prove that appellant threatened Officer Pearce with imminent bodily injury while using or exhibiting his motor vehicle as a deadly weapon, and therefore, the State's proof required evidence that, in the manner of its use or intended use, the motor vehicle was capable of causing death or serious bodily *223 injury.[7] Because the State's proof to establish that the motor vehicle was a deadly weapon either based on its use or exhibition would necessarily include evidence that the motor vehicle was capable of causing death or serious bodily injury, this evidence would also necessarily establish the offense of deadly conduct. This is so because, regardless of whether appellant used or exhibited his motor vehicle as a deadly weapon, appellant's conduct in doing so would necessarily "expose" Officer Pearce "to the deadly character" of the motor vehicle and the inherent risk of serious bodily injury. See Bell, 693 S.W.2d at 438.
The State's principal argument in this case is that exhibiting a deadly weapon is fundamentally different from using it and, therefore, that the exhibition of a motor vehicle as a deadly weapon would not necessarily mean that a complainant was placed in actual imminent danger of serious bodily injury, as is required for deadly conduct. We are unpersuaded by the State's argument. The State mistakenly attempts to focus on a hypothetical scenario in which the exhibition of a motor vehicle would not amount to a determination that it was a deadly weapon due to circumstances showing that it was incapable of causing death or serious bodily injury. In contrast, here, the pleadings for aggravated assault would require proof that the exhibition of the motor vehicle made it capable of causing death or serious bodily injury. Given the requirement that the State's proof show that appellant's motor vehicle was a deadly weapon, the pleading distinction between the use or exhibition of the motor vehicle as a deadly weapon would not cause a different analysis under Bell .
Our conclusion that exhibiting a deadly weapon falls within the reasoning of Bell under the circumstances alleged in this pleading is supported by this Court's analysis in Patterson v. State , 769 S.W.2d 938, 940 (Tex. Crim. App. 1989). In explaining the meanings of the terms "use" and "exhibit" in Patterson , we said,
Each word is exemplary of different types of conduct. "Use," as a verb, may mean a number of things. For example, "use" is defined as "to put into action or service: have recourse to or enjoyment of: employ ... to carry out a purpose or action by means of; make instrumental to an end or process: apply to advantage: turn to account: utilize." In explicating the word the dictionary provides the following synonym: "employ, utilize, apply, avail: use is general and indicates putting to service of a thing, usu. for an intended or fit purpose ...."
"Exhibit," on the other hand, as a verb, is much more definitive in its meaning: "to present to view: show, display: as a. to show (as a feeling) or display (as a quality) outwardly, esp. by visible signs or actions."
Id. at 940-41 (quoting Webster's Third New International Dictionary (1976), p. 796, 2523-24). Following these descriptions, we concluded that to "use" a deadly weapon during the commission of an offense meant that the deadly weapon was "utilized, employed, or applied in order to achieve its intended result: 'the commission of a felony offense or during immediate flight therefrom.' " Id. at 941 (quoting TEX. CODE CRIM. PROC. art 42.12, § 3g(a)(2) ). Conversely, we found that " 'exhibit' only requires that a deadly weapon be consciously shown, displayed, or presented to be viewed during 'the commission of a felony offense or during immediate flight therefrom.' " Id. We further noted that using a deadly weapon during the commission of a felony offense extended *224 to "any employment of a deadly weapon, even its simple possession, if such possession facilitates the associated felony." Id. (emphasis original). In light of the meanings of "use" and "exhibit," we noted that "one can 'use' a deadly weapon without exhibiting it, but it is doubtful that one can exhibit a deadly weapon during the commission of a felony without using it." Id. ; see also Coleman v. State , 145 S.W.3d 649, 652 (Tex. Crim. App. 2004) (noting that "one can 'use' a weapon without exhibiting it, but not vice versa"). Applying the reasoning of Patterson to this case, we observe that a defendant who has committed assault while exhibiting a motor vehicle in such way that it can be properly characterized as a deadly weapon has also by definition used the motor vehicle to threaten imminent bodily injury. Given that we have already held in Bell that such use of a deadly weapon to threaten imminent bodily injury encompasses the elements of deadly conduct, we conclude that the reasoning of Bell applies here.
We disagree with the court of appeals's reliance on the reasoning of the Seventh Court of Appeals in Miller v. State , which distinguished Bell based on the inclusion of "use or exhibit" language in the indictments. Safian , 2016 WL 828337, at *7-8 (citing Miller v. State , 86 S.W.3d 663, 666-67 (Tex. App.-Amarillo 2002, pet. ref'd) ). The court of appeals erred by finding that Bell 's holding does not apply under the instant circumstances in which the indictment alleges the use or exhibition of a motor vehicle as a deadly weapon. For all of the reasons explained above, we agree that the exhibition of a motor vehicle as a deadly weapon implicates the same inherent danger of serious bodily injury that accompanies the use of a deadly weapon. This was the principle on which our holding in Bell relied. Because the exhibition of a motor vehicle as a deadly weapon during the course of an assault poses the same imminent danger of serious bodily injury as would using a motor vehicle as a deadly weapon, deadly conduct is a lesser-included offense of aggravated assault as alleged here. We conclude that Bell 's discussion that deadly conduct is, as a matter of law, a lesser-included offense of aggravated assault by use of a deadly weapon applies equally to the instant circumstances involving the alleged use or exhibition of a motor vehicle as a deadly weapon.
Based on the foregoing analysis, we conclude that, under the first step of the two-part lesser-included-offense analysis, as charged in this case, deadly conduct is a lesser-included offense of aggravated assault. See TEX. CODE CRIM. PROC . art 37.09(1) ; Hall , 225 S.W.3d at 536. Because, under the functional-equivalence concept, the elements of deadly conduct are functionally the same or less than those required for the offense of aggravated assault as alleged here, the court of appeals erred by concluding that deadly conduct was not a lesser-included offense as a matter of law. See McKithan , 324 S.W.3d at 588.
III. Conclusion
We conclude that deadly conduct, as a matter of law, is a lesser-included offense of the charged offense of aggravated assault by threat where it was alleged that appellant used or exhibited a motor vehicle as a deadly weapon. Because the court of appeals held otherwise, we reverse the judgment of the court of appeals and remand this case to that court for it to conduct the second step of the two-step lesser-included offense analysis.

See Tex. Penal Code § 22.02(a)(2), (b)(2)(B).

Although the court of appeals's decision references three cause numbers for each of appellant's three convictions, the ground for review that is before us on discretionary review concerns only cause number 02-15-00154-CR, which pertains to appellant's conviction for aggravated assault on a public servant.

This Court granted a single ground for review: "The court of appeals erred when it affirmed the trial court's denial of the lesser-included jury charge of deadly conduct in the trial for aggravated assault on a public servant."

Article 37.09 lists four circumstances in which an offense is a lesser-included offense. The instant case involves only the possibility described by Article 37.09(1). Tex. Code Crim. Proc . art. 37.09.

The instant case involves an allegation of a non-per se deadly weapon, as opposed to a per se deadly weapon. See Tex. Penal Code § 1.07(a)(17). A per se deadly weapon is defined as "a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury."Id. Because the instant case involves an allegation of a non-per se deadly weapon, a motor vehicle, we limit our analysis accordingly and do not expressly consider whether an allegation of use or exhibition of a per se deadly weapon, such as a firearm, would be encompassed within our holding today.

Reckless conduct was renamed deadly conduct in 1993, but the substantive elements remained unchanged. See Act of June 19, 1993, 73rd Leg., R.S., ch. 900, § 22.05, 1993 Tex. Sess. Law. Serv. 3586, 3623 (effective Sept. 1, 1994).

Tex. Penal Code §§ 22.02(a)(2), 1.07(a)(17)(B).