**Opinion issued August 13, 2024**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-23-00020-CR

———————————

**RON BURCHFIELD, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 506th District Court**
**Grimes County, Texas**
**Trial Court Case No. 18891**

---

## MEMORANDUM OPINION

Appellant Ron Leroy Burchfield appeals his conviction for robbery by threat. *See* TEX. PENAL CODE § 29.02. In a single issue, appellant argues that the trial court erred in denying his requested instruction on a lesser-included offense.[1] We affirm.

---

[1] Because appellant does not challenge the sufficiency of the evidence to support the conviction, we limit our recitation of the facts to those necessary to the disposition of this appeal.

## Background

At trial, Seburn Burns testified that in May 2021, he was living with a friend, Frank Restivo, while Restivo recovered from back surgery. Burns testified that at the time, Burns was suffering from cancer and thought it would be good to get out of the house and help Restivo.

Appellant is Restivo's nephew. Burns and Restivo lived in a mobile home on Restivo's property. During the relevant period, appellant and two friends, Aaron Thacker and Harmony Vasseur, came to stay with Restivo. Appellant and Thacker worked with Restivo in the auto body shop on the property, while Vasseur helped with cooking and light housework.[2]

Burns testified that following a disagreement, appellant and Restivo decided to "go[] separate ways" and appellant intended to move to Houston. On the date of the incident, appellant asked Burns if he would help appellant move, since Burns had a truck. Burns agreed, but after various delays, he informed appellant he would drive to Houston the following day. Burns returned to Restivo's residence and went to sleep.

---

[2]    Testimony from appellant, Burns, and Vasseur described frequent use of methamphetamines by those residing at Restivo's residence. Vasseur testified that she and Thacker were homeless at the time. Neither Restivo nor Thacker testified at trial; Burns testified that Restivo died two months after the incident. Thacker's whereabouts were unknown.

Burns testified that at approximately 3:00 a.m., Vasseur knocked on his window, and he let her inside the residence. As Burns attempted to fall back asleep, he heard someone screaming inside the house. Burns testified that appellant ran into his room with a hammer, pulled him out of bed, and said, "I'm going to beat your f***ing brains out, trying to take my stuff." According to Burns, appellant then took Burns's cell phone and keys and warned Burns that if he called the police, appellant would "come back and cut [him] up, [and] send [him] back in little pieces." Burns further testified that he feared appellant would hit him with the hammer and that he did not give appellant permission to take his keys, truck, or phone. Burns waited a few days in hopes that appellant would return with his truck and cell phone, but when he did not, Burns called police.

Appellant testified in his own defense and provided a different version of events. He testified that on May 21, 2021, he and Burns were each driving their own vehicles loaded with appellant's belongings. Vasseur was riding with Burns. Expecting car trouble, appellant had asked Burns to follow him. The group stopped at a gas station but Burns drove off before appellant finished pumping gas. Appellant became worried that Vasseur might encourage Burns to take off with appellant's belongings, so he returned to Restivo's residence. Restivo called Burns on appellant's behalf and asked him to return. Appellant testified that once everyone returned to Restivo's house, the caravan planned to set out for Houston again, but

3

Burns never left. Appellant and Vasseur continued on in his vehicle and after dropping off some of his things in Houston, he and Vasseur returned to Restivo's house between 1:30 a.m. and 2:00 a.m.

According to appellant, when he returned to the trailer, he went to talk to Burns to find out why Burns did not follow him to Houston. Appellant testified that although he was "disappointed" with Burns, he was not upset and did not raise his voice or yell at Burns. Appellant testified that it was Burns that yelled at appellant, telling him that he was not trying to keep appellant's belongings.

At that point, appellant decided to go unload his things from Burns's truck because, according to appellant, he did not want the argument to cause Burns to suffer an aneurysm or "fall[] over dead." Appellant testified that Burns then insisted that appellant use the truck to take the remainder of his things to Houston as planned. Burns told appellant that he would let Vasseur drive the truck, but not appellant. Appellant testified that Burns gave appellant his phone to use because appellant's phone was dead. Appellant denied ever possessing a hammer on the date in question, testifying that all the hammers were either in the toolbox or locked in Restivo's shop.

According to appellant, he and Thacker set out for Houston in appellant's car, and Vasseur drove Burns's truck. The group drove to a friend's house, where appellant unloaded his things from Burns's truck. Appellant testified that he believed

Vasseur would drive the truck back to Burns and return Burns's phone, but she did not. In June 2021, police located and arrested appellant for aggravated robbery.[3]

Following trial, the jury convicted appellant of the lesser offense of robbery by threat, and the trial court assessed punishment at fifteen years' confinement. This appeal followed.

## Lesser-Included Offense

### A. Standard of Review and Applicable Law

We review a trial court's refusal to submit a lesser-included offense instruction to the jury for an abuse of discretion. *Chavez v. State*, 666 S.W.3d 772, 776 (Tex. Crim. App. 2023) (citing *Threadgill v. State*, 146 S.W.3d 654, 666 (Tex. Crim. App. 2004)). We employ a two-prong test to determine whether a defendant is entitled to an instruction on a lesser-included offense. *Id.* (citing *Rousseau v. State*, 855 S.W.2d 666, 672 (Tex. Crim. App. 1993)). We first compare the statutory elements of the alleged lesser offense with the elements of the greater offense and any descriptive averments in the indictment. *Id.* (citing *Safian v. State*, 543 S.W.3d 216, 220 (Tex. Crim. App. 2018)). If the lesser offense is included within the proof

---

[3] Police also arrested Vasseur, who testified at trial for the prosecution. Though the disposition is unclear from the record, it appears no charges were pending for her at the time of trial. Her testimony was generally consistent with Burns's version of events.

5

necessary to establish the offense charged, the first step is satisfied. *Id.* (citing *Safian*, 543 S.W.3d at 220; TEX. CODE CRIM. PROC. art. 37.09(1)).

Next, we evaluate the evidence to determine whether there is some evidence that would permit a rational jury to acquit the defendant of the greater, charged offense, while convicting him of the lesser-included offense. *Id.* (citing *Guzman v. State*, 188 S.W.3d 185, 188–89 (Tex. Crim. App. 2006)). Though we evaluate all evidence admitted at trial, the evidence must be directly connected to the lesser-included offense and present it as a valid, rational alternative to the greater offense. *Id.* at 776–77 (citing *Goad v. State*, 354 S.W.3d 443, 448, 446 (Tex. Crim. App. 2011)). "[I]f the defendant presents evidence that he committed no offense at all . . . or if he presents no evidence . . . , and there is no evidence otherwise raising the issue, a charge on [a] lesser offense . . . is not required." *Id.* (quoting *Aguilar v. State*, 682 S.W.2d 556, 558 (Tex. Crim. App. 1985) (citations omitted) (footnote omitted)).

**B.    Analysis**

The elements of aggravated robbery as applied to this case are: (1) Burchfield, (2) while in the course of committing theft of property, (3) intentionally or knowingly (4) threatened or placed Seburn Burns in fear of imminent bodily injury or death (5) while using or exhibiting a deadly weapon (a hammer). *See* TEX. PENAL CODE § 29.03(a)(2).

By comparison, the relevant elements of terroristic threat are: (1) threatening to commit any offense involving violence (2) to any person or property (3) with intent (4) to place any person in fear of imminent serious bodily injury. *See id.* § 22.07(a)(2).

The parties dispute whether the first prong of the test is satisfied. Even assuming without deciding that appellant can establish the first prong—whether proof of terroristic threat is included within the proof necessary to establish aggravated robbery—there must still be some evidence that appellant, if guilty, is guilty only of the lesser offense of terroristic threat. *See Chavez*, 666 S.W.3d at 776; *Guzman*, 188 S.W.3d at 188–89.

With respect to this second prong, appellant argues that the testimony that he said "I'm going to bash your f\*\*\*ing brains in"[4] establishes the elements of terroristic threat, regardless of whether appellant exhibited a hammer. But at trial, appellant denied threatening Burns. Appellant testified that Burns was the one who raised his voice and began arguing, not appellant. Stated differently, appellant's argument is that he did not commit an offense, not that if guilty, he was guilty of the lesser offense only. As such, he has failed to establish the second prong. *See Chavez*, 666 S.W.3d at 777, 778; *Aguilar*, 682 S.W.2d at 558; *see also Hendrix v. State*, Nos.

---

[4] According to Burns, appellant's exact words were: "I'm going to beat your f\*\*\*ing brains out, trying to take my stuff."

05-06-00552-CR, 05-06-00553-CR, 2007 WL 2110346, at *3 (Tex. App.—Dallas 2007, pet ref'd) (not designated for publication) (considering second prong of lesser-included offense analysis and holding appellant not entitled to requested instruction on terroristic threat in aggravated robbery case where appellant argued he committed no offense). We therefore overrule his sole issue.

## Conclusion

We affirm the trial court's judgment.

Amparo Monique Guerra
Justice

Panel consists of Justices Landau, Countiss, and Guerra.

Do not publish. TEX. R. APP. P. 47.2(b).