

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-0243-23

### SHAWN EDWARD CRAWFORD, Appellant

### v.

### THE STATE OF TEXAS

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE FOURTH COURT OF APPEALS
### MENARD COUNTY

PARKER, J., delivered the opinion of the Court in which SCHENCK, P.J., and YEARY, KEEL, and FINLEY, JJ., joined. NEWELL, J., filed a dissenting opinion in which RICHARDSON, WALKER, and MCCLURE, JJ., joined. WALKER, J., filed a dissenting opinion in which NEWELL, J., joined.

## OPINION

The body of Appellant's indictment alleged the elements of the offense of assault and, among other things, also alleged that Appellant knew that the victim was "a public servant, to wit: Menard County Deputy Sheriff." The question here is whether this indictment permitted the State to obtain a conviction for the offense of assault on a peace officer. The court of appeals answered that

question "no" and found that the indictment supported only the lesser offense of assault on a public servant.  We disagree and conclude that, with the "deputy sheriff" allegation, the indictment permitted a conviction for assault on a peace officer.

## I. BACKGROUND

### A. Trial

Although the indictment contained two counts, only the first is at issue in this case.  The body of the indictment for the first count provided, in relevant part:

> Defendant . . . did then and there intentionally, knowingly, and recklessly cause bodily injury to Burl Hagler, hereinafter styled the complainant, by shoving Burl Hagler, by kicking Burl Hagler in the chest, or by kicking Burl Hagler in the groin, and the defendant knew that the complainant was a public servant, to wit: *Menard County Deputy Sheriff*, and the complainant was lawfully discharging an official duty, namely attempting to arrest Shawn Crawford.[1]

The caption of the indictment listed the type of offense as "assault peace officer/judge" and cited the Penal Code provision for assault against a peace officer.[2]

Appellant did not object to the indictment before the day of trial.

The voir dire proceedings contained several references to the offense being assault on a peace officer.  In its opening remarks to the venire panel during voir dire, the trial court said:

---

[1] Emphasis added.  The second count alleged that Appellant caused "bodily injury" to "*Burl Hagler*, hereinafter styled the complainant" by "throwing a ladder at Michael Smith" and also alleged that "the complainant" was a "public servant, to wit: Menard County Deputy Sheriff" (emphasis added).  The State did not pursue the second count at trial.  Judge Walker's dissent places a [sic] by Hagler's name in its quotation of the second count, and during a later discussion, the dissent places Smith's name in brackets beside the word "complainant."  The dissent seems to imply that the appearance of Hagler's name in the second count is a typo.  But the actual language of count two makes Hagler the complainant, consequently identifying him as the deputy sheriff.  The dissent's suggestion to the contrary is inaccurate.

[2] Capitalization converted to lower case for ease of reading.  The Penal Code provision cited was TEX. PENAL CODE § 22.01(b-2).

> The Defendant has already been introduced and he is charged, as I've referenced earlier, with the alleged offense of assault on a peace officer, an alleged second-degree felony and I told you what the range of punishment is in this State in the event and only in the event that a person is found guilty of that.

During her remarks, the prosecutor affirmed, "The charge is assault on a peace officer." In questioning a prospective juror, the trial court asked, "Can you consider the maximum punishment in a case where someone has been found guilty of assault on [sic] peace officer?" Later, the trial court prefaced a question about being able to consider the full range of punishment with the statement, "[I]f a person is found guilty of assault on a peace officer under the allegations in this case, the minimum would be two years in prison and the maximum would be 20 years in prison and an optional fine up to $10,000." Appellant did not object to any of these "peace officer" references.

After voir dire was completed, the jury was sworn, and the trial court made additional remarks. The prosecutor read the first count of the indictment to the jury, and Appellant pled "not guilty" to it.

Then, objecting to the indictment for the first time, defense counsel said, "Your Honor, I'm going to make an objection to the indictment read by the District Attorney." When asked to state his objection, defense counsel responded:

> Basically, it's styled as an assault on a peace officer, yet in the body of the indictment itself, it says that he's a public servant, and there is a distinction between assault on a peace officer, which is a second-degree felony, versus assault on a public servant, which is a third-degree felony, and takes into consideration the different punishment ranges.

The trial court deferred ruling on the objection until later in the trial.

At two later points during the trial, before the jury charge conference, the trial court asked defense counsel to expand on his objections. The first time, defense counsel suggested that there

was "an apparent conflict in the indictment" but that the more specific statute—the peace-officer

offense—controlled over the more general statute—the public-servant offense and made the offense

a third-degree felony. In so saying, defense counsel seemed to have articulated part of his objection

backwards, though he at least seemed to be suggesting that his client was entitled to the third-degree

punishment range. The second time, defense counsel demurred, because he wanted a chance to

research authority to present to the trial court. Both times, the trial court continued to defer his

ruling.

>    At the jury charge conference, the trial court ruled against Appellant:

>    That—I've been carrying along the Defendant's objection about the—the charging instrument whether this—whether their indictment alleged is sufficient to make it a second-degree felony concerning the—the assault of a public servant, namely a peace officer, *or whether it was insufficient and only alleged a third-degree felony*. So I find that the State's indictment is—is sufficient to meet the standard of—and the notice clearly even at the top, it shows that it was a second-degree felony range. The Defendant's been put on notice of that. I even gave the instructions to the jury as to the range of punishment, without objection, at the beginning of the case as a second-degree and so I find that there is sufficient allegations in the indictment for the second-degree felony.[3]

Afterwards, the trial court permitted defense counsel to expand on his objection. Defense counsel

said:

>    Judge, we are going to object to the characterization of this being an assault on a police officer charge. The title to the indictment that was handed down by the grand jury does, in fact, state assault on a peace officer, but, as we all know, title is not controlling nor is it indicative of anything. The body is the substance of the indictment. That is the crux of the charge that's levied against the Defendant, and that is what he's put on notice for. Not once in the body of that indictment is the word peace officer, those two words said. It doesn't invoke the punishment range for 22.01(b) dash 2. It invokes it for 22.01(b)(1). It's a public servant. There is an inference that's being drawn that because the words Menard County Sheriff's Deputy is articulated that that infers it's a peace officer and that is an inference that we are

---

[3] Emphasis added.

not capable of making. That is an inference saying that all Menard County Sheriff's Deputies are certified peace officers. That evidence is not in the record. That evidence has not been presented before the Court, nor has it been argued. This is an assault on a public servant charge, a third-degree felony. That's what we geared up for. That's what we believed it to be.[4]

At the beginning of the guilt-stage jury charge, the trial court instructed the jury, "The defendant, Shawn Edward Crawford, is accused of Assault of a Public Servant, to-wit: a peace officer." Later, in stating the "accusation," the jury charge quoted from the indictment, consistent with the language quoted earlier in this opinion.

Included in the jury charge's recitation of the abstract elements of the offense were:

3. the complainant was a public servant, to-wit: a Menard County Sheriff's Deputy; and

4. the defendant knew that the complainant was a public servant, to-wit: a Menard County Sheriff's Deputy.

Corresponding elements in the jury charge's application section were:

3. Burl Hagler was a public servant, to-wit: a Menard County Sheriff's Deputy; and

4. the defendant knew Burl Hagler was a public servant, to-wit: a Menard County Sheriff's Deputy.

The jury charge contained the definition of public servant found in the Penal Code[5] and contained a definition of "peace officer" derived from the Penal Code and the Code of Criminal Procedure.[6] In accordance with the Code of Criminal Procedure, the peace-officer definition defined

---

[4] Defense counsel also suggested that the "public servant" and "peace officer" provisions were mutually exclusive.

[5] *See* TEX. PENAL CODE § 1.07(41) (West 2020).

[6] *See infra* at nn.30-31.

a peace officer to include, among other things, a deputy sheriff.[7] The jury also received a verdict form, which included the options of finding Appellant "not guilty" or "guilty." The "guilty" option stated: "We, the jury, find the defendant, Shawn Edward Crawford, guilty of Assault of a Public Servant, to wit: A Menard County Sheriff's Deputy, as charged in the indictment."

After hearing testimony at the punishment stage and being given a punishment-stage jury charge, the jury assessed a sentence of twelve years in prison and a $10,000 fine. The trial court pronounced sentence in accordance with the jury's verdict. The twelve-year sentence was in the range of punishment for the second-degree felony of assault on a peace officer but not within the range of punishment for the third-degree felony of assault on a public servant.[8]

### B. Appeal

On appeal, Appellant challenged the indictment, the jury charge, and his sentence. First, he claimed that the indictment alleged only the offense of assault on a public servant, a third-degree felony, not the second-degree felony of assault on a peace officer.[9] The court of appeals agreed.[10] Setting out the indictment, the court of appeals said that it "does not state that [Appellant] was charged with assaulting a peace officer."[11] Instead, the court of appeals found that the indictment

---

[7] *See infra* at n.31.

[8] *See* TEX. PENAL CODE §§ 12.33(a) (second-degree punishment range of two to twenty years), 12.34(a) (third-degree punishment range of two to ten years); 22.01(b) (third-degree felony for assault on a public servant); 22.01(b-2) (second-degree felony for assault on a peace officer) (West 2020).

[9] *See Crawford v. State*, 683 S.W.3d 793, 797-98 (Tex. App.—San Antonio 2023).

[10] *Id.* at 801.

[11] *Id.* at 800.

alleged that Appellant "assaulted a public servant who was working as a deputy sheriff at the time, 'namely attempting to arrest [Appellant].'"[12] The appellate court said that "public servant" is not a layman's synonym for "peace officer."[13] The court further stated that it "cannot accept that 'assault on a public servant' and 'assault on a peace officer' will be used interchangeably, depending on the facts of the case."[14]

And finding no defect in the indictment, the court of appeals rejected the State's reliance on cases that required a defendant to object to a defect in the indictment before trial.[15] The court also rejected the State's contention that Appellant forfeited error by not objecting to references to "assault on a peace officer" in voir dire.[16] The court concluded that "if the indictment is facially complete for a third-degree felony, the State cannot simply elect for it to be read as a second-degree felony by announcing it at voir dire."[17] Ultimately, the court of appeals concluded that the indictment was "facially complete for assault on a public servant."[18]

Appellant challenged the jury charge on grounds that the indictment alleged only the offense of assault on a public servant.[19] He claimed that the essential parts of the jury charge and the jury

---

[12] *Id.*

[13] *Id.*

[14] *Id.*

[15] *Id.* at 801.

[16] *Id.*

[17] *Id.*

[18] *Id.*

[19] *See id.*

verdict form, patterned after the indictment, authorized conviction only for assault on a public servant.[20] The court of appeals agreed that the verdict form authorized a conviction only for assault on a public servant.[21]

Appellant's third claim was that his twelve-year sentence exceeded the two-to-ten-year range of punishment for the third-degree offense of assault on a public servant.[22] The court of appeals agreed and remanded the case for a new trial on punishment.[23]

## II. ANALYSIS

### A. The body of the indictment contains everything the State needed to prove.

In *Delarosa v. State*, the issue was whether the indictment in that case alleged the offense of non-consensual sexual assault, the offense of sexual assault of a child, or both.[24] The body of the indictment "completely alleged non-consensual sexual assault, omitting no element."[25] As a

---

[20] *See id.*

[21] *Id.* at 802. The court of appeals also perceived that Appellant was complaining of jury charge error by claiming that the "peace officer" references were erroneous. *Id.* Because it agreed that the jury convicted Appellant of assault against a public servant, it concluded that the "peace officer" references did not cause any harm. *Id.* However, our review of Appellant's brief before the court of appeals convinces us that Appellant did not advance an actual claim of error with respect to the "peace officer" references. Instead, he merely mentioned the references as being erroneous in passing and argued that they did not affect the character of the jury charge and the verdict form as authorizing a conviction only of assault on a public servant.

[22] *See id.*

[23] *Id.* Appellant's prayer in his brief to the court of appeals requested a new trial and, in the alternative, requested that the conviction be reformed to assault on a public servant and the case be remanded for a new punishment hearing. However, all of the argumentation in Appellant's brief supported the latter remedy and not the former.

[24] 677 S.W.3d 668, 677 (Tex. Crim. App. 2023).

[25] *Id.*

consequence, the indictment body was "facially complete."[26] By contrast, the body of the indictment did *not* allege the "child under 17" element needed to establish sexual assault of a child.[27] Although the caption of the indictment contained the phrase "sexual assault of a child" and cited the Penal Code provision for sexual assault of a child, the Court held that this information in the caption did not constitute an "allegation" for purposes of alleging an offense.[28] Consequently, the Court held that the indictment alleged only non-consensual sexual assault and did not allege sexual assault of a child.[29]

But in the present case, the body of the indictment *does* allege a fact that establishes the "peace officer" element of assault on a peace officer—the victim being a "deputy sheriff." Under the applicable Penal Code definition, "peace officer" is someone elected, employed, or appointed under Article 2.12 (now Article 2A.001) of Code of Criminal Procedure or other law.[30] Under Article 2.12, a deputy sheriff is defined as being a "peace officer."[31]

---

[26] *Id.*

[27] *Id.* at 678.

[28] *Id.*

[29] *Id.* at 677-78. Distinguishing the situation in which an indictment's body facially alleges only a misdemeanor that does not adequately invoke the jurisdiction of the district court, the Court observed that the facially complete offense in the body of the indictment before it was a felony and so adequately invoked the district court's jurisdiction. *Id.* at 678.

[30] TEX. PENAL CODE § 1.07(36) (West 2020). *See also id.* § 1.07(36) (current) (referring to TEX. CODE CRIM. PROC. art. 2A.001 instead of former art. 2.12).

[31] TEX. CODE CRIM. PROC. art.2.12(1) (West 2020) ("The following are peace officers: (1) sheriffs, their deputies, and those reserve deputies who hold a permanent peace officer license issued under Chapter 1701, Occupations Code."). *See also id.* art. 2A.001(1) (current) ("The following are peace officers: (1) a sheriff, a sheriff's deputy, or a reserve deputy sheriff who holds a permanent peace officer license issued under Chapter 1701, Occupations Code.").

It is true that the indictment does not contain the words "peace officer." But a deputy sheriff is one of the definitions of peace officer, so all one has to do is look at the applicable statutes. Even when the State does not have to plead a definition of an element in the indictment, it can choose to do so.[32] The fact that the definition appears without the term defined is immaterial. If the State had merely alleged that Appellant caused bodily injury to a deputy sheriff, without including "peace officer" or "public servant" language, there is little doubt that such an indictment would be construed as alleging an assault on a peace officer.

One can think of it this way: Did the grand jurors who assented to this indictment find every fact needed to establish the offense of assault on a peace officer? The answer, obviously, is that they did, because every fact needed for that offense can be found in the body of the indictment—including the allegation that the victim was a deputy sheriff, which, if proven, would establish that the victim was a peace officer.[33] Although the body of the indictment facially alleges assault on a public

---

[32] *See Geick v. State*, 349 S.W.3d 542, 548 (Tex. Crim. App. 2011). Pleading a definition might require the State to prove it. *See id.* We need not address that question here.

[33] "Reserve deputies" are only "peace officers" if licensed. *See supra* at n.31. Article 2.12 lists "deputies" and "reserve deputies" separately in the same series with "sheriff," so that the statute reads: " sheriffs, their deputies, and those reserve deputies . . ." *See id.* So "reserve deputies" is a separate category from, not a subset of, "deputies." Here, the indictment alleged the victim to be a "deputy sheriff" not a "reserve deputy sheriff."

Judge Walker's dissent suggests that the indictment language of "deputy sheriff" could have been intended by the State in this case to encompass a reserve deputy sheriff. As support, the dissent points to the second count and suggests that it labeled Michael Smith as a deputy sheriff, when in fact he was a reserve deputy sheriff. As a factual matter, the dissent is mistaken. Michael Smith was *not* named as the deputy-sheriff victim in count two; *Burl Hagler* was. *See supra* at n.1. The structure of count two could be a use of the "transferred intent" doctrine: an allegation that Appellant intended to injure Smith by throwing a chair at him but actually injured Hagler. *See* TEX. PENAL CODE § 6.04(b)(2) ("A person is nevertheless criminally responsible for causing a result if the only difference between what actually occurred and what he desired, contemplated, or risked is that . . . a different person or property was injured, harmed, or otherwise affected."). Or, as the dissent implies, Hagler's name in count two could be a typo, but then we do not know how far the typo goes.

servant, with that public servant being more specifically described as a "deputy sheriff," it is nevertheless true that the body of the indictment *also* includes every fact needed to convict of assault on a peace officer.[34]

**B. Descriptive averments count in tallying the elements of an offense.**

Even as a mere description of the term "public servant," the "deputy sheriff" allegation necessarily implicates the peace-officer offense. As we shall soon discuss, this is true because "descriptive averments" count for the purpose of tallying the elements of an offense.[35] This can be seen by reviewing how descriptive averments are treated in determining what lesser-included offenses are available.

In evaluating whether an offense qualifies as a "lesser-included offense" for the purpose of

---

Perhaps Hagler's name in count two is the reason that count refers to a "deputy sheriff" instead of a "reserve deputy sheriff." In any event, the State's dismissal of count two might be recognition that count two was problematic in some way. And regardless, the prosecutor's actual intent in drafting the indictment language is irrelevant. As a legal matter, "deputy sheriff" does not include "reserve deputy sheriff," and that might have implications for the State's ability to prove the offense of assault on a peace officer, as pled. *See supra* at n.32.

Judge Walker's dissent finds it ironic that this Court uses the absence of the term "reserve" to close off the possibility that a "deputy" could be a "reserve" deputy but does not do the same for the terms "peace officer" and "public servant." But the two comparisons are not analogous because a peace officer is also a public servant, and a deputy sheriff is both.

[34] And contrary to the conclusion in Judge Newell's dissent, that is precisely what makes this case different from *Delarosa*. In discussing the caption, the dissent expresses a concern about relying upon a fact found by "an entity other than the grand jury," but the grand jury in this case found every fact needed to convict of assault on a peace officer. And, as we explore *infra*, the "deputy sheriff" allegation—even as a mere description of "public servant"—is part of the cognate-pleadings analysis for determining what offenses are included in the indictment.

[35] Nevertheless, if a descriptive averment constitutes a non-statutory allegation for the offense for which a sufficiency review is being conducted, then, in a sufficiency review, any variance in the evidence with respect to the descriptive averment would be analyzed under the law of material variances. *See Johnson v. State*, 364 S.W.3d 292, 298-99 (Tex. Crim. App. 2012).

determining whether a party is entitled to its submission, this Court employs the "cognate-pleadings" approach.[36] Under the cognate-pleadings approach, a lesser offense is included if the charging instrument:

> (1) alleges all of the elements of the lesser-included offense, or
>
> (2) alleges elements plus facts (including descriptive averments, such as non-statutory manner and means, that are alleged for purposes of providing notice) from which all of the elements of the lesser-included offense may be deduced.[37]

The second method of identifying a lesser-included offense is instructive, because even *mere descriptive averments* can provide a basis for finding an offense to be included in a charging instrument. And that is true even though the descriptive averments are not statutory and are pled just to provide notice. And in determining whether an element of a requested lesser offense falls within a descriptive averment in a charging instrument, this Court applies a "functional-equivalence" test.[38] Under the functional-equivalence test, "[a]n element of the lesser-included offense is functionally equivalent to an allegation in the charged greater offense if the statutory elements of the lesser offense can be deduced from the elements and descriptive averments in the indictment."[39]

Even if the "deputy sheriff" allegation is a "descriptive averment," it still counts in identifying lesser-included offenses. If, for example, there were an offense that *would* be a lesser-included offense of assault on a public servant, *except* for requiring that the victim be a deputy

---

[36] *McKithan v. State*, 324 S.W.3d 582, 587 (Tex. Crim. App. 2010).

[37] *Safian v. State*, 543 S.W.3d 216, 220 (Tex. Crim. App. 2018) (quoting *Ex parte Watson*, 306 S.W.3d 259, 273 (Tex. Crim. App. 2009) (op. on reh'g)).

[38] *Id.*

[39] *Id.*

sheriff, then the offense would qualify as lesser-included under Appellant's indictment. And because of functional equivalence, if that hypothetical lesser offense had a more general element of "peace officer," it would still be a lesser-included offense because "peace officer" could be deduced from the "deputy sheriff" allegation.

The idea that descriptive averments count applies logically to *any* offense that the State seeks to pursue under the charging instrument, regardless of whether we would want to label such an offense as "lesser." The cognate-pleadings approach makes the charging instrument, not just the supposed penal statute at issue, the basis for tallying elements of the offense. The whole point of deciding whether an offense qualifies as "lesser included" under the cognate-pleadings approach is to decide whether it is *included in the charging instrument.* And anything that is included in the charging instrument is fair game for the State to pursue. In *Grey v. State*, we emphasized, "It is the State, not the defendant, that chooses what offense is to be charged."[40] As part of that power, "the State can abandon an element of the charged offense *without prior notice* and proceed to prosecute a lesser-included offense."[41] And given that power, we further reasoned, "there is no logical reason why the State could not abandon its unqualified pursuit of the charged offense in favor of a qualified pursuit that includes the prosecution of a lesser-included offense in the alternative."[42] Because *Grey* recognizes the State's authority to pursue any allegations supported by the charging instrument, the conclusion is obvious: the State can pursue any offense that the allegations in the body of the charging instrument would support, and it can pursue such an offense alone or in the alternative as

---

[40] 298 S.W.3d 644, 650 (Tex. Crim. App. 2009).

[41] *Id.* (emphasis added).

[42] *Id.*

a lesser-included offense.[43]    The body of Appellant's indictment contains allegations that would

support a prosecution for assault on a peace officer, so the State had the option to pursue that

offense, and it did.[44]  The court of appeals was wrong to conclude otherwise.

### C. When the offense the State wants to try is supported by the charging instrument, forcing the State to trial on a different offense is not an available remedy.

What is left is the idea that Appellant might have been misled because some language in the

body of the indictment might support the notion that the State intended to charge the third-degree

felony of assault on a public servant.  But even if there is a residual notice problem in that regard,

---

[43] Judge Walker's dissent complains that our holding infringes on the prosecutor's discretion to choose which offense to charge, and that particular circumstances might warrant charging the third-degree public-servant offense instead of the second-degree peace-officer offense.  But nothing in our holding today prevents a prosecutor under a peace-officer indictment from pursuing the lesser-included public-servant offense.  And *Grey* explicitly permits it.  *See supra* at nn.41-42.

[44] What counts as a lesser-included offense might not always be intuitive.  An offense can still be "lesser included" if it has the *same* elements as the charged offense.  *Safian*, 543 S.W.3d at 220 (Functional-equivalence test is met if the elements are "functionally the same or less than those required to prove the charged offense.");  TEX. CODE CRIM. PROC. art. 37.09(1) ("An offense is a lesser included offense if . . . it is established by proof of the same or less than all the facts required to establish the commission of the offense charged.").  And, "the range of punishment is *irrelevant* in deciding whether an offense is a lesser-included offense under Article 37.09." *Hicks v. State*, 372 S.W.3d 649, 650 (Tex. Crim. App. 2012) (emphasis added) (upholding submission of reckless aggravated assault as lesser-included offense of intentional or knowing aggravated assault even though it had the same punishment range).  In fact, assault on a peace officer literally, though counterintuitively, satisfies the requirements for a lesser-included offense under Appellant's indictment under the cognate-pleadings approach because (1) the "deputy sheriff" descriptive averment counts, (2) the "peace officer" element can be deduced from the "deputy sheriff" averment, (3) with "peace officer" as a deduced element, the offense of assault on a peace officer has the same elements as the offense in the indictment, and (4) having a greater punishment range does not exempt assault on a peace officer from being a lesser-included offense.  The answer to the cognitive dissonance produced by such a counterintuitive conclusion is to recognize that any offense that satisfies the requirements of being included in the charging instrument under the cognate-pleadings approach qualifies as either the charged offense or one that is otherwise included. *See supra*, opinion body, this paragraph.

there remains the question of the appropriate remedy.

Because the indictment supported the peace-officer offense, the trial court could not force the State to pursue a different offense at trial. As we explained in *Grey*, it is the State, not the defendant, that gets to choose what offense to pursue under the charging instrument.[45] Even when an indictment improperly contains multiple offenses within a single count, the State is nevertheless "entitled to prosecute all of them."[46] Although only one conviction is allowed per count, the trial court must structure any remedy to allow the jury to pass on any indictment-supported offenses the State wishes to pursue.[47] Requiring the State to abandon a supported-by-the-indictment offense that it wishes to pursue would effectively amend the indictment,[48] and the State cannot be forced to accede to such an amendment.[49] The only way to force the State to change an indictment is to quash it.[50]

---

[45] *See supra* at n.40.

[46] *Martinez v. State*, 225 S.W.3d 550, 555 (Tex. Crim. App. 2007).

[47] *Id.* In a multiplicity situation, the trial court has an obligation to ensure jury unanimity with regard to separate offenses and, if unanimity is ensured through the submission of multiple verdict forms, to retain the offense that most benefits the State. *Id.* Under law that predated *Martinez*, the remedy for an indictment that was improperly duplicitous for alleging more than one offense was to quash the indictment or to require the State to elect which offense it wishes to pursue. *Villalva v. State*, 142 Tex. Crim. 120, 124 (1941)*; Melley v. State*, 93 Tex. Crim. 522, 523-24 (1922).

[48] *See supra* at nn.46-47.

[49] *See Ex parte Perry*, 483 S.W.3d 884, 916 (Tex. Crim. App. 2016) ("Concluding that quashing Count II would be premature, the trial court ordered the State to amend Count II of Governor Perry's indictment. But a trial court has no authority to order the State to amend an indictment; the State has the right to stand on its indictment and appeal any dismissal that might result from refusing to amend. The trial court's order that the State amend the indictment was, in practical terms, a threat to quash Count II if it were not amended.") (footnote omitted).

[50] *Id.*

So, even if what occurred in the present case created some sort of notice problem for the defendant, the trial court could not have imposed the remedy of forcing the State to pursue the offense of assault on a public servant instead of the offense of assault on a peace officer. The trial court did not have the authority to force the State to submit to the jury an offense other than the peace-officer offense the State wished to pursue.

**D. Other possible remedies were forfeited.**

The thrust of Appellant's claim at trial and on appeal has been that he was entitled to be tried for the offense of assault on a public servant under the wording of his indictment. We have concluded that he was not in fact entitled to that remedy. But even if we construed Appellant's claim more liberally to include other possible remedies, his claim would still fail because these other remedies were not preserved.

To the extent Appellant's "objection to the indictment" could have been interpreted as an effort to have it quashed, the objection was untimely. To preserve error on a complaint that the indictment must be quashed, a defendant must object before the day trial begins.[51] Appellant's objection after trial had begun was too late.

Another conceivable remedy would be a mistrial based on the idea that the defense was misled by language in the indictment.[52] But to preserve error, a party must "let the trial judge know

---

[51] *See* TEX. CODE CRIM. PROC. art. 1.14(b) (" If the defendant does not object to a defect, error, or irregularity of form or substance in an indictment or information before the date on which the trial on the merits commences, he waives and forfeits the right to object to the defect, error, or irregularity and he may not raise the objection on appeal or in any other postconviction proceeding."); *Studer v. State*, 799 S.W.2d 263 (Tex. Crim. App. 1990).

[52] We express no opinion on whether such a remedy would be available if preserved.

what he wants" as well as giving a reason for being entitled to relief.[53]  Appellant never requested

a mistrial.  Moreover, preserving error requires that a party obtain a ruling or object to a refusal to

rule.[54]  When the trial court finally ruled on Appellant's objection, it ruled that the question before

it was whether the indictment was sufficient to allege the second-degree felony of assault on a peace

officer or was sufficient to allege only the third-degree felony of assault on a public servant.  The

trial court's ruling appears to have embraced only which offense the trial court and the jury would

proceed on, not whether the trial would continue at all.

Moreover, it is at least arguable that a "misleading" indictment claim in this case would still

be subject to the rule that an objection to an indictment must be raised prior to trial.  After all, not

only does the body of the indictment support a prosecution for assault on a peace officer, but the

indictment's caption explicitly titles the offense as assault on a peace officer and cites the Penal Code

subsection for assault on a peace officer.  The caption would seem to seriously undercut any notion

that the State was intending to charge assault on a public servant rather than assault on a peace

officer.  Our prior decisions in *Jenkins* and *Kirkpatrick* warned that the caption could be used in

some situations to construe a charging instrument.[55]  Although *Delarosa* held that the caption could

not be used to import allegations into a charging instrument when the body of the charging

---

[53] *Ex parte Nuncio*, 662 S.W.3d 903, 914 (Tex. Crim. App. 2022) (quoting *Pena v. State*, 285 S.W.3d 459, 464 (Tex. Crim. App. 2009)); *see also* TEX. R. APP. P. 33.1(a)(1)(A) (referring to a "request, objection, or motion" stating "the grounds for the ruling that the complaining party sought").

[54] TEX. R. APP. P. 33.1(a)(2).

[55] *See Jenkins v. State*, 592 S.W.3d 894, 899-902 (Tex. Crim. App. 2018) (caption used to establish identity of the defendant); *Kirkpatrick v. State*, 279 S.W.3d 324, 329 (Tex. Crim. App. 2009) (caption used to clarify State's intent to charge an offense within the district court's jurisdiction).

instrument alleged a facially complete offense, it is at least arguable that the caption could be used to clarify the State's intent for the purpose of conveying notice. Even if the caption cannot *add content*, it arguably might be able to clarify what the State intended by the content that is already present in the body of the charging instrument. If so, that clarification could arguably show an "irregularity" in the indictment that Appellant needed to object to.[56]

But assuming for the sake of argument that the caption did not place Appellant on notice that the State would construe the indictment the way it ultimately did, Appellant was placed on notice of the State's construction during voir dire. Between the State and the trial court, there were *four* references to the offense being assault on a peace officer, but counsel did not object to any of them. And two of those references involved the trial court questioning prospective jurors on the higher range of punishment. But counsel did not say, "Objection, two-to-twenty is not the proper range of punishment for the offense of assault on a public servant. The proper range of punishment is two-to-ten because assault on a public servant is a third-degree felony."[57] If counsel had really been confused about what offense was at issue, he would have wanted the jury to be questioned on the correct range of punishment. But immediately after Appellant pled guilty to the indictment, counsel raised his objection. Not only was the objection late, but its lateness appeared to be purposeful.

For an objection to preserve a complaint, it must be "timely."[58] To be timely, a complaint

---

[56] *See supra* at n.51. We would note that, when counsel first objected, he objected *to the indictment*, which makes no sense if the claim is that, due to its facial completeness, there is no error in the indictment that he needed to object to.

[57] *See* TEX. PENAL CODE §§ 12.33(a) (second-degree punishment range of two to twenty years), 12.34(a) (third-degree punishment range of two to ten years).

[58] TEX. R. APP. P. 33.1(a)(1).

must be made as soon as the ground for complaint is, or should be, apparent.[59] Moreover, an

objection should be made "at a time when the judge is in the proper position to do something about

it."[60] And timeliness is also concerned with giving "the opposing party an opportunity to correct the

error."[61] There are restrictions on the ability to amend an indictment after the trial commences.[62]

And the attachment of jeopardy restricts the ability of the trial court to grant a mistrial.[63] Appellant's

complaint was not made when grounds for complaint became apparent during voir dire. And

because he waited until jeopardy had attached, he made granting a remedy for his complaint more

complicated. If and to the extent it embraced the notion of a mistrial, appellant's complaint was, by

any reasonable measure, untimely.

Another conceivable remedy would have been a continuance. But Appellant never requested

a continuance, much less do so in writing in accordance with statutory requirements.[64]

### E. The jury charge and verdict form sufficiently supported a conviction for assault on a peace officer.

As we explained in the background section of the opinion, one of Appellant's claims to the

---

[59] *Nuncio*, 662 S.W.3d at 914.

[60] *Id.* (quoting *Pena*, 285 S.W.3d at 464).

[61] *Id.* (quoting *Pena*, *supra*).

[62] *See* TEX. CODE CRIM. PROC. art. 28.10.

[63] *See Illinois v. Somerville*, 410 U.S. 458, 468 (1973) ("Only if jeopardy has attached is a court called upon to determine whether the declaration of a mistrial was required by 'manifest necessity' or the 'ends of public justice.'").

[64] *See Anderson v. State*, 301 S.W.3d 276, 279-80 (Tex. Crim. App. 2009) (holding that statutes require motion for continuance to be written and sworn); TEX. CODE CRIM. PROC. arts. 29.03, 29.08.

court of appeals was that the jury charge and verdict forms authorized a conviction only on the offense of assault on a public servant. We could conceivably remand this case to the court of appeals to reconsider that claim in light of our opinion today, but there is no need to do so because the answer is obvious.[65] As we explained earlier, the abstract-elements list in the jury charge, the application section of the jury charge, and the jury verdict form all included the words "Menard County Sheriff's Deputy" along with the "public servant" language. So, in conformity with the indictment, the jury was always explicitly required to find that the victim was a deputy sheriff and that Appellant knew that fact. While the better practice, even with this indictment, would have been for the jury charge to explicitly track the language of the "peace officer" provision in the assault statute, the language actually used still required the jury to find facts that necessarily satisfied all the elements of the offense of assault on a peace officer.

We reverse the judgment of the court of appeals and affirm the judgment of the trial court.

Delivered: March 26, 2025

Publish

---

[65] *See Davison v. State*, 405 S.W.3d 682, 691-92 (Tex. Crim. App. 2013) ("[W]hen the proper resolution of the remaining issue is clear, we will sometimes dispose of the case in the name of judicial economy.").