

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-25-00122-CR

ANTHONY VAZQUEZ, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 364th District Court
Lubbock County, Texas
Trial Court Nos. DC-2025-CR-0141, Counts 1 & 2, Honorable William R. Eichman II, Presiding

August 28, 2025

MEMORANDUM OPINION

Before QUINN, C.J., and DOSS and YARBROUGH, JJ.

Following pleas of not guilty, Appellant, Anthony Vazquez, was convicted by a jury of two counts of burglary of a habitation: Count 1 with intent to commit assault and Count 2 with intent to commit theft, enhanced by two prior felonies.[1]  Punishment was assessed by the trial court at concurrent sentences of twenty-five years.  Appellant challenges his convictions asserting the trial court erred in (1) denying his request for a jury instruction

---

[1] TEX. PENAL CODE ANN. §§ 30.02(a)(1), 12.42(d).

on the lesser included offense of criminal trespass and (2) admitting extraneous offense evidence which caused him harm.  We affirm.

## BACKGROUND

The complainant and Appellant met in 2013 and began an on-again-off-again relationship.  She was aware he was in a recovery program for drug and alcohol abuse at that time and over the course of a seven-year relationship, he was in and out of rehab.  They share two daughters.  In 2016, the complainant purchased a house, and despite Appellant living with her at that time, she alone is the record owner of the house.  The parties never married.

The complainant testified that in 2019, Appellant was acting crazy and paranoid from drug use and accused her of wearing a wire.  He had her remove her clothes to check for a wire.  She called the police for assistance to pack some belongings and leave the house.

In July 2020, when she was pregnant with her second child, the parties were separated, but Appellant came to the house under the pretense of repairing a light fixture.  The complainant told him she did not want to be in a relationship with him.  He grabbed her arm and twisted it, choked her, and threatened to kill her.  She called the police and was granted a two-year protective order in September 2020.  Appellant moved to the Dallas/Fort Worth area, and the parties did not have contact for two years.  After the protective order expired, in late 2022, the complainant became aware Appellant had returned and was couch surfing with friends.  He had no home.

Appellant contacted the complainant and told her he was working with a sponsor and was interested in co-parenting their daughters. For the sake of their daughters, she gave him another chance to co-parent but did not seek to rekindle their romantic relationship. She allowed him to come to her house if he provided proof that he was sober. She also permitted him to do some work in her house and he occasionally stayed there.

Appellant continued to pursue her romantically and they began fighting. She suspected he was no longer sober and no longer wanted him in her house. She revoked her permission for him to be there in early 2023, which made him angry. He kept showing up under the pretense of retrieving personal items. She gave him an ultimatum to take all his things, or she would donate them. She never gave Appellant a key but did notice her spare key was missing. She asked him about it, and he claimed he had thrown it in the garage and could not find it.

On the evening of February 7, 2023, when she was leaving work, she worried Appellant might be in her house and called 911 for a courtesy drive-by. Police conducted a walk-through and did not find Appellant or anyone else in the house.

Four days later, on February 11, the complainant arrived home and noticed the wreath on her front door was missing. As she inserted her key to unlock the front door, she heard footsteps and Appellant opened the door. She described him as "crazy looking" and "saying nonsense." He told her to get in the house because he was "about to f--- you up." She ran to her car and locked herself in. Appellant followed her to the car and pulled so hard he broke off the driver's side door handle and broke the side mirror. She called

3

911 and was advised to leave the area until police checked the house. She drove one street over and waited for an officer to meet her.

Several officers testified Appellant was inside the house when they arrived. He insisted it was his house, and he had every right to be there. He had personal belongings, including a motorcycle at the address. He also claimed he had a key to the house but was never able to provide one. He claimed he received mail at that address, and his driver's license showed that address.

After Appellant was arrested and placed in a patrol vehicle, the complainant returned home. She observed Appellant had damaged many of her belongings and slashed most of her clothes and some boots. Officers found the complainant's debit card and a gift card belonging to her on Appellant.

**ISSUE ONE—LESSER-INCLUDED OFFENSE INSTRUCTION**

Appellant maintains the trial court committed reversible error in denying his requested instruction for a lesser-included-offense instruction on criminal trespass. We disagree.

We review the trial court's denial of a lesser-included-offense instruction for abuse of discretion. *Chavez v.* State, 666 S.W.3d 772, 776 (Tex. 2023). To determine whether a defendant is entitled to a lesser-included-offense instruction, courts apply a two-part analysis. *Bullock v. State*, 509 S.W.3d 921, 924 (Tex. Crim. App. 2016). First, we compare the elements of the alleged lesser included offense with the elements of the charged offense and any descriptive averments in the indictment. *Safian v. State*, 543 S.W.3d 216, 220 (Tex. Crim. App. 2018). If proof of the lesser offense is included within

4

proof of the greater offense, the first step is satisfied. *Id.*; TEX. CODE CRIM. PROC. ANN. art. 37.09(1). Second, there must be a further determination of whether there is some evidence in the record that would permit a rational jury to find the defendant guilty of only the lesser offense. *Rice v. State*, 333 S.W.3d 140, 145 (Tex. Crim. App. 2011). Under this second step, even a scintilla of evidence is sufficient, no matter how controverted, weak, or incredible. *Goad v. State*, 354 S.W.3d 443, 446–47 (Tex. Crim. App. 2011). The burden for satisfying the second prong is low. *Wade v. State*, 663 S.W.3d 175, 181 (Tex. Crim. App. 2022). However, "it is not enough that the jury may disbelieve crucial evidence pertaining to the greater offense, but rather there must be some evidence directly germane to the lesser included offense for the finder of fact to consider before an instruction on a lesser included offense is warranted." *Bullock*, 509 S.W.3d at 925. In determining if a defendant is entitled to a lesser-included-offense instruction, we view the facts in the light most favorable to giving the instruction and not in the light most favorable to the verdict. *Wade*, 663 S.W.3d at 181.

The first step of our analysis is one of law. *Hall v. State*, 225 S.W.3d 524, 535 (Tex. Crim. App. 2007). As relevant here, one of the definitions of a lesser included offense is if "it is established by proof of the same or less than all the facts required to establish the commission of the offense charged." TEX. CODE CRIM. PROC. ANN. art. 37.09(1). *See Hall*, 225 S.W.3d at 536; *Irving v. State*, 176 S.W.3d 842, 845 (Tex. Crim. App. 2005).

A person commits the offense of burglary if, without the effective consent of the owner, the person enters a habitation or building and commits or attempts to commit a felony, theft, or an assault. TEX. PENAL CODE ANN. § 30.02(a)(3); *accord Morgan v. State*,

5

501 S.W.3d 84, 90 (Tex. Crim. App. 2016). The offense is a second degree felony if committed in a habitation. TEX. PENAL CODE ANN. § 30.02(c)(2). A person commits assault if the person intentionally or knowingly threatens another with imminent bodily injury. § 22.01(a)(2). The elements of theft are unlawful appropriation of property with the intent to deprive the owner of the property. § 31.03(a).

In *Goad*, 354 S.W.3d at 446, the Texas Court of Criminal Appeals held that "[c]riminal trespass can be a lesser included offense of burglary of a habitation." However, in *State v. Meru*, 414 S.W.3d 159, 163–64 (Tex. Crim. App. 2013), the Court clarified that whether criminal trespass is a lesser included offense of burglary of a habitation in a particular case depends on whether the defendant is alleged to have intruded on the property with his entire body or only part of it. In this regard, the Court considered that "entry" under criminal trespass required "intrusion of the entire body" while "entry" under burglary of a habitation required intrusion by "(1) any part of the body; or (2) any physical object connected with the body." *Id. Cf.* TEX. PENAL CODE ANN. § 30.05(b)(1) (criminal trespass) *with* § 30.02(b) (burglary of a habitation). The Court then expressly contemplated a scenario where the indictment did not allege either:

> [i]n a burglary indictment in which the State does not allege whether the defendant's entry was full or partial, an instruction on criminal trespass as a lesser included offense would be prohibited. However, a defendant who committed a full-body entry and wants the opportunity for an instruction on criminal trespass can file a motion to quash the indictment for lack of particularity. This would force the State to re-file the indictment, specifying the type of entry it alleges the defendant committed and allow either party to later request an instruction on criminal trespass.

*Meru*, 414 S.W.3d at 164 n.3. The Court ultimately concluded the defendant was not entitled to a lesser-included-offense instruction for criminal trespass, but that criminal

trespass *could* have been a lesser included offense if the indictment had "alleged that he

entered by intruding his entire body into the habitation." *Id.* at 164.

In the underlying case, Count 1 of the indictment charged Appellant as follows:

> Defendant . . . did then and there, with intent to commit an assault against
> [the complainant], enter a habitation without the effective consent of . . . the
> owner . . . .

Count 2 of the indictment alleged as follows:

> Defendant . . . did then and there, with intent to commit theft, enter a
> habitation without the effective consent of . . . the owner . . . .

Neither Count includes an averment that Appellant entered the habitation with his entire

body. Appellant did not move to quash the indictment and force the State to re-indict him

with a more specific allegation on entry into the complainant's house. Thus, under *Meru*,

a lesser-included-offense instruction on criminal trespass would have been inappropriate.

Appellant asserts the trial court misapplied *Meru* and that it is distinguishable

because unlike here, Meru only partially entered the habitation. Also, relying on *McKithan

v. State*, 324 S.W.3d 582, 588 (Tex. Crim. App. 2010), he argues this Court can use the

functional equivalence test to determine if the elements of criminal trespass are

functionally the same as those of burglary.[2]

This Court has previously addressed *Meru* and declined to depart from its holding

which would require abolishing *Hall's* cognate-pleadings approach. *See Mojica v. State*,

---

[2] *Cf. Ex parte Watson*, 306 S.W.3d 259, 273 (Tex. Crim. App. 2009) (op. on reh'g) ("[T]he elements of the lesser included offense do not have to be pleaded in the indictment if they can be deduced from facts alleged in the indictment."). This is referred to as the functional equivalence analysis. However, in the underlying case, no facts were alleged to deduce the elements of the lesser-included offense of criminal trespass.

7

No. 07-18-00330-CR, 2019 Tex. App LEXIS 5139, at *6 (Tex. App.—Amarillo June 19, 2019, pet. ref'd) (mem. op., not designated for publication). *See also Lang v. State*, 664 S.W.3d 155, 166 (Tex. Crim. App. 2022) (declining to depart from cognate pleadings analysis to determine whether a lesser included offense exists). Here, the indictment simply alleged Appellant did "enter" a habitation. There were no descriptive averments on whether his entire body or only a part of his body entered the complainant's home. Thus, because the statutory definition of criminal trespass requires proof of the additional element of a defendant's "entire body" intruding on the premises, proof of the lesser offense is *not* included in proof of the greater offense of burglary. The indictment, which Appellant did not challenge in the trial court, controlled whether he was entitled to a lesser-included-offense instruction. *Meru*, 414 S.W.3d at 164 n.3. As indicted, he was not entitled to a lesser-included-offense instruction on criminal trespass. Appellant failed to meet the first prong of the lesser-included-offense analysis. Thus, we need not consider the second step of the analysis to determine if Appellant was guilty only of the lesser-included offense. *Id.* at 164. The trial court did not abuse its discretion in denying his request.[3] Issue one is overruled.

**ISSUE TWO—EXTRANEOUS OFFENSE EVIDENCE**

Appellant complains of the trial court's admission of testimony from the complainant regarding prior abuse and a recording of a 911 call made by her four days prior to the date of the offense. He challenges the complainant's affidavit in support of

---

[3] The erroneous refusal to give a requested instruction on a lesser included offense is charge error subject to an *Almanza* harm analysis. *See Saunders v. State*, 840 S.W.2d 390, 392 (Tex. Crim. App. 1992) (per curiam) (citing *Almanza v. State*, 686 S.W.2d 157 (Tex. Crim. App. 1984)). Having found no abuse of discretion by the trial court, we need not engage in a jury-charge-error analysis to determine whether denial of the lesser-included-offense instruction caused some harm to Appellant.

the protective order averring he had never been violent prior to her seeking the protective order in 2020. He asserts the extraneous evidence should have been excluded under Rules 404(b) and 403 of the Texas Rules of Evidence. We disagree.

Rule 404(b) operates to exclude evidence of extraneous offenses offered solely to show that a defendant acted in conformity with bad character by committing the charged offense. TEX. R. EVID. 404(b)(1). But the Rule also provides that extraneous offenses are admissible "for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." TEX. R. EVID. 404(b)(2). Even if evidence is admissible under Rule 404, the trial court may exclude the evidence if its probative value is substantially outweighed by the danger of unfair prejudice. TEX. R. EVID. 403.

A trial court's ruling under Rule 403 is reviewed for abuse of discretion. *Pawlak v. State*, 420 S.W.3d 807, 810 (Tex. Crim. App. 2013). That said, a trial court is given "an especially high level of deference" for its Rule 403 determinations. *Robisheaux v. State*, 483 S.W.3d 205, 218 (Tex. App.—Austin 2016, pet. ref'd) (citing *United States v. Fields*, 483 F.3d 313, 354 (5th Cir. 2007)). There is no abuse of discretion if the trial court's ruling is within the "zone of reasonable disagreement." *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009). A trial court's ruling is within this zone if the extraneous event is relevant to a material, non-propensity issue. *Id.*

Rule 403 provides that otherwise relevant and admissible evidence may be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or

9

needlessly presenting cumulative evidence." TEX. R. EVID. 403. "The plain language of Rule 403 does not allow a trial court to exclude otherwise relevant evidence when that evidence is merely prejudicial." *Robisheaux*, 483 S.W.3d at 217–18. Evidence is *unfairly* prejudicial when it has "an undue tendency to suggest that a decision was made on an improper basis." *Montgomery v. State*, 810 S.W.2d 372, 389 (Tex. Crim. App. 1990) (op. on reh'g) (emphasis added).

> In conducting a Rule 403 balancing test, the trial court weighs the following factors:
>
> (1) the inherent probative force of the proffered evidence along with
>
> (2) the proponent's need for that evidence against
>
> (3) any tendency of the evidence to suggest decision on an improper basis
>
> (4) any tendency of the evidence to confuse or distract the jury from the main issues
>
> (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and
>
> (6) the likelihood presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted.

*Hall v. State*, 663 S.W.3d 15, 32 (Tex. Crim. App. 2021) (citing *Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006)).

In the underlying trial, outside the jury's presence, the trial court held a hearing on whether to admit the complained-of extraneous acts. The complainant was questioned on voir dire and described her history and relationship with Appellant. She testified he struggled with substance abuse. She further testified to prior assaults, including a sexual assault. The trial court ruled she could be questioned about the prior assaults and

10

Appellant's substance abuse but not about the sexual assault because its relevance was substantially outweighed by the danger of unfair prejudice. Appellant was granted a running objection.[4] The trial court gave the jury a limiting instruction on consideration of the extraneous acts.

The evidence of prior assaults and the 911 recording from four days before the incident were both admissible to establish the nature of the relationship between the complainant and Appellant as well as his plan and intent to reconcile with her. *See* TEX. CODE CRIM. PROC. ANN. art. 38.371(b) (permitting evidence of the nature of the relationship between the actor and victim in a case of family violence). *See also McGregor v. State*, No. 07-23-00217-CR, 2024 Tex. App. LEXIS 3670, at *8–9 (Tex. App.—Amarillo May 29, 2024, no pet.) (mem. op., not designated for publication) ("The Legislature has determined the nature of the relationship is a permissible, non-character-conformity purpose for admission of such evidence.") (citation omitted); *Curtis v. State*, No. 07-22-00273-CR, 2023 Tex. App. LEXIS 6079, at *3–4 (Tex. App.—Amarillo Aug. 10, 2023, no pet.) (mem. op., not designated for publication) (history of extraneous family violence found not to outweigh the danger of unfair prejudice). Here, there was evidence Appellant had choked the victim and threatened to kill her which established a pattern of family violence. Testimony from a sergeant established police had been dispatched to the complainant's home on other occasions and he was familiar with the complainant and her house.

---

[4] Appellant complained of the trial court's ruling based on the complainant's affidavit in support of the protective order in which she averred that July 2020 was the first time Appellant assaulted her. She testified during cross-examination that after much counseling, she realized she blocked out prior instances of abuse. She testified, "[i]t was my truth at the time." The trial court noted the affidavit could be used for impeachment purposes.

The challenged admission of the February 7, 2023, 911 call was relevant to a material issue in the case—to rebut Appellant's claim he had consent to be in the house. The evidence was not offered to show he acted in conformance with his character. The trial court's admission of the objected-to evidence had relevance to a fact of consequence and did not violate Rule 404(b).

Having established the relevance of the evidence, we must now assess whether the trial court properly weighed the probative value against the danger of unfair prejudice under Rule 403. "Probative value" refers to how strongly the evidence makes more or less probable the existence of a fact of consequence coupled with the proponent's need for the evidence. *Casey v. State*, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007). "Unfair prejudice" refers to a tendency to suggest the decision was made on an improper basis, though not necessarily an "emotional one" as Appellant suggests. *Id.*

Appellant relies on *Abdnor v. State*, 871 S.W.2d 726, 738 (Tex. Crim. App. 1994) in support of his argument the objected-to evidence was prejudicial and caused him harm. He argues such evidence is "inherently prejudicial." But the Court of Criminal Appeals has held that evidence is not excludable if it is "merely" prejudicial; "all evidence against a defendant is, by its very nature, designed to be prejudicial." *Pawlak*, 420 S.W.3d at 811. Rule 403 addresses *unfair* prejudice. TEX. R. EVID. 403. Additionally, in a "he said, she said" case, Rule 403 "should be used sparingly to exclude relevant, otherwise admissible evidence" in these types of cases. *Hammer v. State*, 296 S.W.3d 555, 561-62 (Tex. Crim. App. 2009).

The probative force of the prior assaults and challenged 911 call established the framework for the State to develop its case in the charged offense even if it did not itself establish a material fact. *See Estrada v. State*, 313 S.W.3d 274, 300 (Tex. Crim. App. 2010) (disagreeing with claim a 911 call was extremely prejudicial because it provided the framework for developing the State's case). Here, Appellant has not demonstrated the extraneous acts confused the jury or that they were given any undue weight which resulted in a decision being reached on an improper basis. The extraneous evidence was not needlessly cumulative, and the State did not consume an inordinate amount of time on the evidence. Finally, the trial court's limiting instruction, which we must presume the jury followed, protected against any impermissible use of Appellant's extraneous acts. *Craven v. State*, No. 07-24-00004-CR, 2024 Tex. App. LEXIS 6659, at *7 (Tex. App.—Amarillo Sept. 30, 2024, pet. ref'd) (mem. op., not designated for publication). The trial court did not abuse its discretion in admitting the complainant's testimony regarding prior assaults and the 911 call made four days prior to the date of the incident. Issue two is overruled.

## CONCLUSION

The trial court's judgment is affirmed.

Alex Yarbrough
Justice

Do not publish.

13