

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

## NO. PD-0284-25

**BOBBY CARL LENNOX, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW FROM THE SIXTH COURT OF APPEALS LAMAR COUNTY

**PARKER, J., filed a concurring opinion.**

### CONCURRING OPINION

The court of appeals engaged in an involved discussion of jury-charge error at the guilt and punishment stages and accorded a non-standard remedy for guilt-stage jury-charge error. Despite the complexity of its discussion, the court did not connect all the dots—it did not adequately address the State's preservation argument and did not explain how it could impose the remedy of reformation for a

guilt-stage jury-charge error when the usual remedy for that sort of error is a new trial as to guilt. If we connect all the dots, the court of appeals's resolution is ultimately correct, but this case would be much simpler if the court of appeals had recognized that Appellant's jury-charge complaint was essentially also a sufficiency complaint. The evidence was insufficient to show the charged offenses of state-jail-felony "check" forgery because it showed only the lesser-included value-ladder offenses of Class-B-misdemeanor forgery. As a consequence of this insufficiency, Appellant was entitled to reformation of his convictions to the misdemeanor offenses and remand for a new punishment hearing—the exact remedy given by the court of appeals.

## I. BACKGROUND

### A. Trial

The indictment charged Appellant with three counts of forgery. The first count charged that Appellant:

> on or about January 7, 2019 . . . did then and there, with intent to
> defraud or harm another, pass to Nima Sherpa, a forged writing,
> knowing such writing to be forged, and such writing had been so made
> or completed that it purported to be the act of James McKnight, who
> did not authorize the act, and the writing was a check of the tenor
> following:

and then included a photocopy of a check dated January 7, 2019, for $137. The

second and third counts followed this pattern, with dates of January 9 and January 12 and amounts of $130 and $150. Enhancement paragraphs for each count alleged two prior sequential felony convictions for enhancement. The caption of the indictment characterized the type of offense as "forgery financial instrument, habitual offender" and as a "state jail felony (punished as second degree)."[1]

When the indictment was read to the jury, the prosecutor referred to each photocopied check as "photocopy of the front of check number [number of the check at issue]," and those checks were ultimately introduced into evidence. The evidence also showed that Appellant cashed these checks at a convenience store managed by Sherpa.

The introductory paragraph of the guilt-stage jury charge referred to each of the counts as involving "forgery of a financial instrument" committed "on or about" the particular date listed in the indictment. The application paragraphs in that charge tracked the language of the indictment's counts except that they did not include photocopies of the checks or refer to the enhancement allegations. Nevertheless, on the signed verdict forms, the jury found Appellant guilty "as charged in Count [One, Two, or Three] of the Indictment." The punishment-stage

---

[1] Capitalization converted to lowercase for ease of reading.

jury charge prescribed the range of punishment for a second-degree felony if the enhancement allegations were found true and for a state-jail felony if they were not. The jury convicted Appellant, found the enhancement allegations true, and assessed a sentence of seventeen years for each count.

## B. Appeal

When this case was originally before us, we concluded that the value-ladder provisions in the forgery statute trumped the state-jail felony provision relating to checks if the evidence satisfied the value-ladder elements.[2] On remand to the court of appeals, the State argued that Appellant forfeited error because he did not object to the absence of the value-ladder version of the offenses in the jury charge. Relying on *Posey v. State*,[3] the State claimed that this was so because the value-ladder provisions were a defensive issue to the offense of forgery of a check and that defensive issues are not law applicable to the case absent an objection, so that there was no jury-charge error and therefore no occasion to perform a harm analysis. Without addressing the State's reliance on *Posey*, the court of appeals held that error in the jury charge is analyzed for "egregious harm" harm under

---

[2] *State v. Green*, 682 S.W.3d 253, 278-79 (Tex. Crim. App. 2024).

[3] 966 S.W.2d 57 (Tex. Crim. App. 1998).

*Almanza v. State* and that all jury-charge error must be reviewed regardless of preservation in the trial court.[4]

The court of appeals then found that the guilt-stage jury charge was erroneous because it should have instructed on the Class-B-misdemeanor value-ladder offenses, in addition to the state-jail felony offenses.[5]  In addressing the jury-charge factor in its harm analysis, however, the appellate court held that the jury-charge error was "even more egregious" because the evidence supported guilt under the value-ladder offenses but *not* under the state-jail-felony offenses:

> The uncontroverted evidence presented at trial showed that Lennox forged three checks, took them to a Quick Track convenience store, passed them, and in return, received property in the form of money. That evidence was not contested at trial, which, in this situation, makes the charge error even more egregious.  Because the evidence supported violations of subsection (e-1)(2) *and not subsection (d)*, this factor weighs in favor of a finding of egregious harm.[6]

After conducting a holistic review of the jury charge, the evidence, and the parties' arguments, the court of appeals found these perceived errors in the guilt-stage jury

---

[4]  *Lennox v. State*, No. 06-19-00164-CR, 2025 WL 793896, *3, *4 (Tex. App.—Texarkana March 13, 2025) (not designated for publication) (citing *Almanza v. State*, 686 S.W.2d 157 (Tex. Crim. App. 1984)).

[5]  *Id.* at *5.

[6]  *Id.* (emphasis added).

charge to be egregiously harmful.[7]

Afterwards, the court of appeals found the punishment-stage jury charge to be erroneous because it instructed on the wrong range of punishment.[8] After conducting a holistic review of the punishment jury charge and the State's punishment argument, and taking into account the guilt-stage evidence, the court found the perceived punishment-charge errors to be egregiously harmful.[9]

Then, without explaining the basis for its remedy, the court of appeals held that Appellant was entitled to a modification of the judgments to reflect conviction for the misdemeanor value-ladder offenses and to a new punishment trial.[10]

The court of appeals did not explain why it did not treat the issues before it as evidentiary sufficiency, but on original submission, the court of appeals had noted that Appellant "[did] not challenge the sufficiency of the evidence as to any of the three charges against him."[11]

## II. ANALYSIS

---

[7] *Id.* at *5-6.

[8] *Id.* at *6-7.

[9] *Id.* at *7.

[10] *Id.*

[11] *Lennox v. State*, 613 S.W.3d 597, 600 n.3 (Tex. Crim. App. 2020).

## A. The Charged Offense

Under the version of the statute in effect in January 2019, forgery was a state-jail felony when "the writing is or purports to be" one of certain enumerated financial documents, including a "check."[12] Forgery was a Class B misdemeanor if "the actor engaged in the conduct to obtain or attempt to obtain a property or service . . . [and] the value of the property or service is $100 or more but less than $750."[13] Each count in the indictment alleged that the writing forged was a "check." None of the counts alleged that the check was made "to obtain or attempt to obtain a property or service," and nothing in the textual allegations of each count alleged a particular value, though one could deduce value from the photocopied checks. It is also true that the statutory value-ladder offense does not require the forged writing to be a check. And the photocopies of the checks appear to be descriptive averments pled to provide notice as to what checks the State was referring to.[14] Thus, the body of the indictment facially alleged the state-jail felony

---

[12] TEX. PENAL CODE § 32.21(d) (West 2020).

[13] *Id.* § 32.21(e-1)(2).

[14] *See Crawford v. State*, 710 S.W.3d 774, 782-83 (Tex. Crim. App. 2025) (referring to "descriptive averments" that "are not statutory and are pled just to provide notice" and suggesting that "deputy sheriff" allegation could be viewed as descriptive averment of "public servant" element in the indictment); *Safian v. State*, 543 S.W.3d 216, 220 (Tex. Crim. App. 2018) (referring to "descriptive averments, such as non-statutory manner and means, that are alleged for purposes of providing notice" as facts in addition to "elements" that can be alleged in

offenses of forgery of a check.[15]

Even if the body of the indictment were unclear about which offenses were being alleged, only the state-jail-felony offenses conferred jurisdiction on the district court, and an "indictment's return in a felony court put[s] [a defendant] on notice that the charging of the felony offense was intended."[16]  Further, the caption indicated that the offenses were state-jail felonies enhanced to second-degree felony punishment.   When the body of an indictment is ambiguous as to which offense was intended, the caption can be looked at to help resolve the ambiguity.[17]

Moreover, the enhancement paragraphs also suggested that felony offenses were intended.   The allegation of *sequential* felonies fits the enhancement statute

---

a charging instrument).

[15] *See Crawford*, *supra* at 781-82 (Body of indictment facially alleged assault on a public servant with "public servant" language in the indictment, though "public servant" was more specifically described as a "deputy sheriff" and that description also meant that indictment also alleged every fact needed to convict of assault on a peace officer.).

[16] *Kirkpatrick v. State*,  279 S.W.3d 324, 329 (Tex. Crim. App. 2009).

[17] See *id.* (referring to caption indicating offense was a felony); *see also Crawford*, 710 S.W.3d at 786 (saying that the caption could at least arguably be used "to clarify what the State intended by the content that is already present in the body of the charging instrument"); *Delarosa v. State*, 677 S.W.3d 668, 677 (Tex. Crim. App. 2023) (distinguishing *Kirkpatrick*'s reliance on the caption because of jurisdictional problem in that case of interpreting indictment to allege a misdemeanor offense and declining to look at the caption when the body of the indictment alleges a facially complete felony offense).

that raises the punishment for a state-jail felony to that of second degree.[18]  There is

an enhancement provision for Class B misdemeanors, but it requires only one

conviction (a felony, or a Class A or B misdemeanor), so the enhancement

allegations in the indictment do not fit such an offense.[19]

If the indictment alleged only Class B misdemeanor offenses, the jury charge

would be in error if it charged state-jail felony offenses.  But because the indictment

alleged state-jail felony offenses, we must engage in further analysis to see if the

jury charge was in error.

## B. Lesser-Included Offense

The next logical question is whether the value-ladder (Class B misdemeanor)

offenses were included in the indictment as lesser-included offenses.  If we were

confronted with just the statutory provisions, we might wonder whether a value-

ladder offense could qualify as a lesser-included offense of the state-jail-felony

offense.  The most common test for lesser-included offenses requires that the

lesser-included offense be "established by proof of the same or less than all the

facts required to establish the commission of the offense charged."[20]  The state-

---

[18]  *See* TEX. PENAL CODE § 12.425(b).

[19]  *See id.* at § 12.43(b).

[20]  TEX. CODE CRIM. PROc. art. 37.09(1).

jail-felony offense requires proof of one of a list of specified financial instruments (here, a "check") not required by the value-ladder version of the offense. And the value-ladder offense purports to require two extra facts not required by the state-jail-felony offense: the defendant acting "to obtain or attempt to obtain a property or service" plus an amount.

For each count, the indictment specified a "check" being forged, but one could imagine a check being forged to withstand an audit without any intent that it be used to obtain a property or service. But the indictment here also specified that Appellant did "pass" the "check," and when a charging instrument alleges a particular statutory method of committing an offense, that controls the elements to be proven.[21] "Pass" is not defined by statute, but, in the context of forgery, Black's Law Dictionary defines the word to mean "[t]o publish, transfer, or circulate,"[22] and Webster's defines it to mean "to put in circulation."[23] Can someone "pass" a check without trying to obtain a property or service? We do not

---

[21] *See Geick v. State*, 349 S.W.3d 542, 545 (Tex. Crim. App. 2011) ("When a statute lays out several alternative methods of committing the offense, and the indictment alleges only one of those methods, 'the law as authorized by the indictment' is limited to the method specified in the indictment.").

[22] *Pass*, BLACK'S LAW DICTIONARY (12th ed. 2024) (entry 5) ("To publish, transfer, or circulate (a thing, often a forgery) <he was found guilty of passing counterfeit bills>.").

[23] https://www.merriam-webster.com/dictionary/pass (viewed on Dec. 8, 2025) (entry 7a) (*pass* bad checks) (italics in original).

have to answer that question because the checks themselves were in this indictment.

Even though they were descriptive averments, under this Court's cognate-pleadings test, descriptive averments count for the purpose of tallying elements for a lesser-included offense.[24]  It is enough that an element needed for a particular lesser-included offense can be "deduced from" a descriptive averment.[25]  The photocopied checks in the indictment purported to be made out to Appellant, so if Appellant "passed" them, then he used them to obtain money.

The remaining question, then, is whether "money" qualifies as "property." Chapter 32 defines "Property" to mean, among other things:

> (B)  tangible or intangible personal property including anything severed from land;  or

> (C)  a document, including money, that represents or embodies anything of value.[26]

Subdivision (C) explicitly includes "money."  Nor can one persuasively argue that

---

[24]  *Crawford*, 710 S.W.3d at 782-83; *Safian*, 543 S.W.3d at 220.  They even count for purposes of a *greater* offense that the State has the option to pursue under a charging instrument. *See Crawford*, *supra* at 783.

[25]  *Crawford*, *supra*; *Safian*, *supra*.

[26]  *See* TEX. PENAL CODE § 32.01(2) (defining what "property" means "[i]n this chapter").  There appears to be no generic, code-wide definition of "property" in TEX. PENAL CODE § 1.07.

money in this definition extends only to tangible money. If someone gains intangible money in the form of a bank deposit, he has the ability from his bank account to access tangible money. And subdivision (B) extends to "intangible personal property" anyway, and if money can be tangible property under (C), any intangible version of it would surely at least be intangible property under (B).[27]

So, under *this* indictment, in light of the descriptive averments (the photocopied checks), the value-ladder offenses were lesser-included offenses.[28]

### C. Preservation / "Law Applicable to the Case"

Under *Posey v. State*, a defensive issue is not law applicable to the case if it is neither requested nor submitted.[29] And if a defensive issue is not law applicable to the case, then its absence from the jury charge is not "error," and so the need to

---

[27] The person alleged in the indictment as the one Appellant passed the checks to—Sherpa—was a convenience-store manager, though the indictment did not contain that description. Had that description been in the indictment, it would have been deducible that the checks were cashed for tangible money.

[28] Because the value-ladder offenses qualified, via descriptive averments, as a lesser-included offenses under Art. 37.09(1), I need not consider whether they could qualify under a different lesser-included test. *Cf.* TEX. CODE CRIM. PROC. art. 37.09(2) ("[I]t differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest suffices to establish its commission.").

[29] 966 S.W.2d 57, 62-64 (Tex. Crim. App. 1998). In *Barrera v. State*, the Court held that a submitted defensive issue was law applicable to the case even if not requested by the defense. 982 S.W.2d 415, 416 (Tex. Crim. App. 1998).

find harm under *Almanza* is not triggered.[30]  In *Tolbert v. State*, this Court held that lesser-included offenses were treated as defensive issues for this purpose.[31] Whether any lesser-included offenses get submitted is a decision that "frequently depend[s] upon trial strategy and tactics."[32] These cases give substance to the State's argument: The State's claim is that, because Appellant did not request the value-ladder offenses, he forfeited them entirely, with him not even being entitled to an analysis for egregious harm.

The problem with the State's argument, though, is that *Tolbert* assumes that the submission of the charged offense does not itself happen to be error.  In almost every case, the State is entitled to the submission of the charged offense.   But that is *not* true when the evidence is insufficient to support the charged offense.

In *Malik v. State*, the case that imposed the "hypothetically correct jury charge" standard for sufficiency of the evidence, the Court recognized that an offense supported by insufficient evidence should never be submitted to a jury.[33]

---

[30]  *Posey*, *supra*.

[31]   306 S.W.3d 776, 780-82 (Tex. Crim. App. 2010).

[32]  *Id.* at 780.

[33]   953 S.W.2d 234, 237 (Tex. Crim. App. 1997) ("Moreover, *Benson*'s reliance upon *Forman* and *Burks* for the proposition that insufficient evidence means the case should never have been submitted to the jury underscores the inappropriateness of using the jury charge as a measurement of sufficiency. If the case should never have been submitted to the jury, that means

And this Court has held that it is error to submit a theory of liability that is not supported by the evidence.[34] And based partly on *Malik*, Judge Keller's dissent in *Collier v. State* observed that, "If removing the element with insufficient evidentiary support results in downgrading the charged offense to a lesser-included offense, then the lesser-included offense is the greatest offense that may be included in the jury charge and for which the State may seek a conviction."[35] Although it was only a dissent, her statement appears to be an accurate statement of the law in light of *Malik*, and *Collier* was later overruled.[36]

The present case does not involve an aggravating element that was not proven but involves "mitigating" elements that appear to have been established as a matter of law, at least if Appellant were found to have engaged in the conduct. The evidence at trial showed that the photocopies of checks were accurate

---

there should not have been a jury charge in the case. If the question is whether a jury charge should even exist, how can the jury charge be the measurement of evidentiary sufficiency.").

[34] *Watson v. State*, 693 S.W.2d 938, 940 (Tex. Crim. App. 1985) ("Over appellant's objection, the trial court charged the jury that they could convict appellant if they found he, 'acting either alone or as a party to the offense' committed the offense of burglary. . . .There is no evidence, either direct or circumstantial, that the appellant entered the Perkins' residence. The fact that he was discovered 'jimmying' with the door of another house some six days later is not probative of this aspect of the instant offense. We find that the Court of Appeals was correct in finding error.").

[35] 999 S.W.2d 779, 787 (Tex. Crim. App. 1999) (Keller, J., dissenting).

[36] *See Bowen v. State*, 374 S.W.3d 427, 428 (Tex. Crim. App. 2012).

representations of what Appellant forged.[37]  Consequently, the evidence was insufficient to support the charged offenses and sufficient only to support the lesser-included value-ladder offenses.  As such, the guilt-stage jury charge should have charged only on the value-ladder offenses and *erred* to do otherwise.

Or stated another way, Appellant was entitled to an instructed verdict on the charged state-jail-felony offenses and the submission of only the lesser-included value-ladder offenses.  This Court has consistently maintained that a claim of error in failing to grant a motion for instructed verdict is analyzed as a claim of insufficient evidence.[38]  And this Court has also consistently maintained that sufficiency-of-the-evidence challenges need not be preserved.[39] Had the court of appeals analyzed the issue before us as a sufficiency challenge, the lack of any preservation requirement would have been obvious.

### D. Harm / Insufficiency

Here, the evidence was insufficient to support the jury's guilt-stage verdict,

---

[37]  The evidence at trial can vary non-materially from a non-statutory descriptive averment without rendering the evidence insufficient to support the *charged* offense.  *See Johnson v. State*, 364 S.W.3d 292 (Tex. Crim. App. 2012).  I need not address how a variance regarding a descriptive averment might affect a lesser-included offense since there was no variance with respect to the checks in the present case.

[38]  *Smith v. State*,  499 S.W.3d 1, 6 & n.16 (Tex. Crim. App. 2016).

[39]  *Baltimore v. State*,  689 S.W.3d 331, 346 & n.63 (Tex. Crim. App. 2024).

so a finding of egregious harm from the errors in submitting the charged offenses is virtually automatic. A full-blown harm analysis would make sense if an appellate court were addressing the submission of an *alternative* theory of an offense that was supported by insufficient evidence. When multiple theories of an offense are submitted to the jury, evidence is sufficient to support a guilty verdict on that offense so long as it is sufficient to support one of the theories,[40] but the submission of a theory unsupported by the evidence is jury-charge error that requires a harm analysis if the question of jury-charge error is in play on appeal.[41] But when there is no evidence to support the submitted offense at all, and the jury finds the defendant guilty of that offense, the jury necessarily finds the defendant guilty of an offense it shouldn't have. There is simply no point in going through the usual *Almanza* harm factors—considering the jury charge, the evidence, arguments of counsel, and other factors—because a finding of harm is a foregone conclusion in the insufficiency-to-support-the-offense-at-all scenario.[42]

---

[40] *Cada v. State*, 334 S.W.3d 766, 771 & n.14 (Tex. Crim. App. 2011).

[41] *Barron v. State*, 353 S.W.3d 879, 883-84 (Tex. Crim. App. 2011) (if synergistic theory of the offense was unsupported by the evidence, full-blown *Almanza* harm analysis required).

[42] *But see Arteaga v. State*, 521 S.W.3d 329, 338-40 (Tex. Crim. App. 2017)( conducting a relatively short analysis under the *Almanza* factors but essentially saying there was harm because "the evidence conclusively establishe[d]" that the aggravating element of the defendant being prohibited from marrying the victim (as understood by the penal provision) was untrue).

The court of appeals also did not explain its decision to impose the remedy of reformation and remand for a new punishment hearing. "The normative remedy for harmful [guilt-stage] jury charge error is to reverse the convictions and remand for a new trial."[43] But "if the harm suffered by the defendant due to charge error can be remedied by a different, less drastic remedy . . . then a defendant should not get the windfall of a new trial at the expense of usurping the role of the factfinder."[44] Double -jeopardy principles require acquittal of an offense for which the evidence has been found legally insufficient.[45] So the court of appeals could not simply remand for a new trial as to guilt. And even for jury charge error, reformation to a lesser-included offense and remand for a new punishment hearing is an available remedy if (1) it would cure the harm from the error, (2) the evidence is sufficient to support the lesser-included offense, and (3) the jury "must have necessarily found" the lesser-included offense in finding the defendant guilty of the charged offense.[46] This was the remedy the *Arteaga* court applied to jury charge error in a sexual-assault case resulting from the submission

---

[43] *Id.* (bracketed material added for clarity).

[44] *Id.* (ellipsis inserted).

[45] *Burks v. United States*, 437 U.S. 1, 18 (1978).

[46] *Arteaga*, 521 S.W.3d at 340-41.

of a "prohibited from marrying" aggravating element that was not supported by the evidence.[47]

Here, as in *Arteaga*, the guilt-stage harm was that Appellant was convicted of a greater offense than supported by the evidence. Reformation to the offenses supported by the evidence cures that harm—at least if the jury must have necessarily found Appellant guilty of those offenses, which I discuss below. And as discussed in part II.C., the evidence was sufficient to support the lesser-included value-ladder offenses.

The remaining guilt-stage harm question, then, is whether the jury necessarily found the value-ladder offenses when it found Appellant guilty of the state-jail felony offenses. Although the application paragraphs in the guilt-stage jury charge did not include photocopies of the checks, each such paragraph referred to the date the check was passed—a date which also matched the date written on the check. The photocopies of the checks were in the indictment and also in evidence, and, for each count, the jury found the defendant guilty "as charged in the indictment." Under these circumstances, it is clear that the jury necessarily found that Appellant committed the value-ladder offenses.

---

[47] *See id.* at 338-41.

As for punishment, harm was necessarily egregious because the punishment assessed by the jury—seventeen years—was outside the range of punishment for an enhanced Class B misdemeanor, which carried a maximum possible sentence of 180 days. There was, again, no point in conducting a full-blown *Almanza* analysis. And a remand for a new punishment trial was a proper remedy for this harm.

But of course, the analysis would have been much simpler if treated as a sufficiency-of-the-evidence claim. If the evidence is insufficient to support the charged offense, reformation to a lesser-included offense and remand for a new punishment trial is the appropriate remedy so long as the lesser offense is (1) in fact lesser-included, (2) supported by sufficient evidence, and (3) one that the jury must necessarily have found in finding guilt of the charged offense.[48] As has been explained in connection with the issue of jury-charge error, all three of these elements were met. In fact, *Arteaga* borrowed from the sufficiency context in asserting a nonstandard remedy for the jury-charge error it addressed.[49] The jury-charge error in that case, as in the present case, could have easily been reframed as a sufficiency-of-the-evidence challenge.

---

[48] *Thornton v. State*, 425 S.W.3d 289, 298-99 (Tex. Crim. App. 2014).

[49] *Arteaga*, 521 S.W.3d at 340 (discussing *Bowen v. State*, 374 S.W.3d 427, 429 (Tex. Crim. App. 2012) and its "progeny" and quoting from that progeny—*Thornton*).

## III. CONCLUSION

The evidence was insufficient to support the charged state-jail felony offenses of forgery of a financial instrument and was sufficient only to support the lesser-included value-ladder offenses. Whether viewed as jury charge error for submitting charged offenses that were not supported by the evidence or as an insufficiency of the evidence to convict on the charged offenses, the issue was not forfeited by Appellant's failure to object. The court of appeals correctly found that Appellant did not forfeit his claims, and that court accorded the correct remedy. With these comments, I concur in the Court's judgment.

Filed: January 29, 2026

Publish